HARDMAN, APPELLANT, *v.* BOARD OF REVIEW, BUREAU OF
UNEMPLOYMENT COMPENSATION ET, APPELLEES.

Common Pleas Court, Clark County.

No. 58104.   Decided May 11, 1964.

258

*Messrs. Frayne, Balzer, Warren & Andreoff*, for appellant. *Mr. William B. Saxbe*, attorney general, Mr. Bernard L. Heffernan, for appellees.

GOLDMAN, J. This is an appeal from an order of the Board of Review, Bureau of Unemployment Compensation, made on April 25, 1963, affirming the decision of the Referee, which denied the right of claimant to participate in unemployment benefits.

Appellant claims that the decision denying him the right to participate in unemployment benefits was unlawful, unreasonable and against the manifest weight of the evidence.

Appellant was employed by the Ohio Fuel Gas Company from October 14, 1958, until he was discharged on December 21, 1962. The reasons given by employer for his discharge were "incompetence in his work and incompatibility with his supervisors." (See form titled "Request to Employer for Wage and Separation Information.")

Appellees contend that claimant is not entitled to participate in unemployment benefits because "he was discharged for just cause." (Section 4141.29 [D][2][a], Revised Code.)

The issue to be determined, therefore, is whether or not claimant was discharged for just cause within the meaning of the Statute above cited.

The Court has carefully read the transcript of testimony and examined the various exhibits and records upon which the decision in this case was based.

The evidence offered in behalf of the employer consisted in part of the testimony of two witnesses, one a division plant foreman and the other a local plant foreman. Their testimony clearly established that they were dissatisfied with claimant and his work, but the record fails to disclose any specification of fact, other than one incident which will be discussed later in this decision, upon which their dissatisfaction with claimant's work was based.

The charges against appellant as appear in the transcript of testimony are general and vague and tend in the main to picture claimant as an employee who was "leaning on his shovel." (See Transcript, page 30.) However, these charges were based entirely on hearsay and on complaints allegedly made by others whose identity the witnesses for employer consistently refused to divulge. (See Transcript, pages 15-16-17-88.) On the other hand, the uncontradicted testimony of witnesses called by claimant, each of whom was still employed by employer at the date of hearing, indicated that claimant had a good work record. (See Transcript, pages 38-49.)

Claimant's discharge actually was triggered off on December 18, 1962, three days prior to his discharge, by an incident to which considerable significance is attached. Claimant was employed at the time as a truck driver, and on the date in question, while he was at the site of a gas line repair job where a hole was being dug, his supervisor instructed him to drive the load of dirt then on his truck to a site five or six miles from the city of Springfield, to dump the dirt, and to bring back a load of gravel which was to be used to fill up holes on several other projects then under way. Claimant drove off pursuant to such instructions, but while on his way he claims he heard some conversation by his supervisor over the intercom, to the effect that still another driver had appeared on the scene with sufficient gravel to take care of the jobs for which gravel was required. Claimant contends that this conversation led him to believe that the gravel he was ordered to bring back would no longer be needed. He contends that he attempted to reach his

superior by intercom to confirm his interpretation of what had happened, but did not succeed in reaching him, and, concluding that the gravel which he was to bring back was not needed, he returned to the site of another repair job. There he found his supervisor, who accused him of failing and refusing to follow instructions and ordered him to go home and stay there until he received further notice. His discharge followed three days later.

It is claimant's contention that he did not wilfully refuse to obey orders as claimed by his supervisor, but rather that he turned his truck around for the reasons above stated, and that he proceeded back to the job site, not to shirk his work, but in order to assist the other members of the crew in finishing the job they were then and there doing.

Employer contends that claimant's discharge was the result of previous infractions in not applying himself to his work, plus his failure on December 18, 1962, to follow instructions as noted, and that his discharge was therefore for "just cause," as provided for by Statute.

Section 4141.28, Revised Code, under which this appeal was brought, provides in part that "if the Court finds that the decision was unlawful, unreasonable and against the manifest weight of the evidence, it should reverse and vacate such decision . . .," etc.

Was the decision in the instant case, which in effect upheld his discharge as being for just cause, unlawful, unreasonable, or against the manifest weight of the evidence?

Upon an examination of the entire record, it is the opinion of this Court that the answer to this question must be in the affirmative.

With respect first of all to the general accusations that claimant's work was not up to standard and that claimant was one who excessively "leaned on his shovel," the Court is compelled to conclude that, insofar as the record discloses, such accusation was based exclusively on hearsay and on a total and complete lack of specifications. It would have been an impossible task for any employee to defend himself against accusations thus made.

With respect to claimant's failure to follow through liter-

ally the instructions of his supervisor on December 18, 1962, the incident above described, an examination of the record reveals considerable confusion and contradictory evidence over exactly what occurred on that occasion. Actually, the testimony of claimant's co-worker, who was on the scene at the time and is still employed by the Company, confirms and corroborates the version given by claimant as to what transpired on that occasion. (See Transcript, pages 52 and 55.) In any event, the record clearly fails to establish that claimant's decision to turn his truck back on that occasion was either a wilful disregard of his instructions or anything other than the result of an exercise of judgment which this Court concludes was plausible and reasonable, even though it might have been mistaken with respect to what he was required to do under the circumstances which he then believed to exist.

The record discloses that claimant's employment was of such nature that he was expected *by his employer* on occasions to carry on his duties without direct supervision and to use his own judgment when the occasion required. (See Transcript, page 19.) Claimant was not intended to be a mere mechanical robot. December 18, 1962, provided an occasion when claimant felt he was required to use his own judgment under circumstances which this Court finds as reasonable, even though it did not appear satisfactory to his employer. It is difficult to escape the conclusion, on the basis of a careful examination of the entire record, that had not his employer already become unhappy with claimant for reasons which it felt justified, even though these reasons do not appear in the record, the incident of December 18, 1962, would not have been considered serious or even an infraction of any work rule, as now urged upon the Court.

The record also discloses that claimant in his own testimony admitted he was involved in a fight with a fellow employee on one occasion, but this took place after hours, off company premises, and apparently was not regarded seriously by either claimant or his employer, and claimant's version of the same, as appears in the record, is uncontradicted by any other evidence in the record.

The Court finds that the record fails to disclose that claim-

ant's conduct on December 18, 1962, was the result of a wilful or heedless disregard of duty or violation of his instructions, but rather the result of a decision reasonably, even though perhaps mistakenly, arrived at. The Court also finds that the decision to deny benefits to claimant, insofar as it was based on his previous work record, was not supported on the record by relevant probative evidence.

The Court further finds that, even when considered together, neither claimant's previous work record nor the incident of December 18, 1962, appear in any different light, and together do not constitute just cause for his discharge within the meaning of the Unemployment Compensation Act.

Thus the Court finds that the decision to deny claimant unemployment compensation benefits was unlawful, unreasonable and against the manifest weight of the evidence. The Court has examined the authorities referred to it by appellees, but finds they do not warrant or compel a finding contrary to the one here reached.

The Court is aware that, in the absence of restrictions upon an employer as may often be found in a contract of employment, an employer has a right to discharge an employee with or without just cause, but the Court must emphasize that, to deny such employee the benefit of unemployment compensation, the record must disclose that his discharge was for "just cause," and that such finding must be based on relevant probative evidence appearing in the record. For the most recent discussion of the rule applicable under these circumstances, see *Cunningham* v. *Spears*, 26 Ohio Opinions (2d), 401, and O. L. R., April 20, 1964. To hold otherwise would not only do violence to the liberal construction the Act itself enjoins upon the Court (see Section 4141.46, Revised Code), but would make a mockery of the Unemployment Act. It would place an employee at the mercy of a whim or caprice of his employer, so that, if he wished to discharge him, he could merely claim dissatisfaction with his work, and thus not only discharge him, which he may have a legal right to do, but also deny him the benefits which the Act intends an employee to have and which can be denied him only in the event his discharge is for "just cause." It may be inconvenient to an employer to organize and submit proba-

tive evidence of an employee's inadequacy when unemployment compensation benefits are sought, but this is a burden which must be assumed, otherwise the Act becomes meaningless and ineffective.

The decision of the Board of Review will be reversed and set aside.

An entry in accordance with this decision may be prepared and submitted.