CORBIN, Appellant,

v.

OHIO BUREAU OF EMPLOYMENT SERVICES et al., Appellees.

[Cite as *Corbin v. Ohio Bur. of Emp. Serv.* (1991), 77 Ohio App.3d 626.]

Court of Appeals of Ohio,
Franklin County.

No. 91AP–615.

Decided Oct. 10, 1991.

*Robert G. Byrom* and *Legal Aid Society of Columbus,* for appellant.

*Lee Fisher,* Attorney General, and *Charles Zamora,* Assistant Attorney General, for appellees.

---

Tyack, Judge.

Jack Corbin went to work for the United Methodist Children's Home as a counselor on March 6, 1989. When his efforts in that position were unsatisfactory, he was allowed to transfer into maintenance, working mostly on the grounds of the United Methodist Children's Home. He and his supervisor did not agree about the quality of his work on the grounds, which led to Corbin being partially reassigned to do custodial work in a school building. Corbin had no background in and received no training in care or repair of the heating and cooling systems for the building.

On October 15, 1989, the heating system for the building developed a problem. Apparently due to a malfunctioning of the pneumatic system involving the thermostats, the thermostats constantly called for heat. As a

result, the temperature in the building increased to the point that when the director of schools entered the building on Sunday afternoon, he encountered what he described as "a crushing heat wave."

Jack Corbin attempted to counter this situation by opening doors and windows in the building. When this did not solve the problem, he called the person at home who was purportedly the expert on the heating and cooling systems. That individual did not choose to come to the school to address the problem personally but told Corbin to tap on the air compressor to see if it would start. When that failed, Corbin was instructed to turn off the gas to the boiler. Corbin had trouble understanding how to do this, but he ultimately returned to the telephone to report that he had found the valve and would shut the gas off.

The following day, the heat was on and out of control. Corbin's supervisor concluded that Corbin had turned the gas to the boiler off and then turned it back on, thereby creating a dangerous situation. As a result, Corbin was fired.

Jack Corbin applied for unemployment benefits, alleging that he was fired without just cause. He won on the initial determination. His former employer then appealed to the Unemployment Compensation Board of Review (hereinafter "board of review"), which set the matter for hearing before a referee on June 1, 1990.

Apparently, Corbin was not present at the time scheduled for the hearing, so he was not in the room while the hearing was being conducted. He later wrote a letter to the board of review which explained the situation from his point of view and sought further appeal:

"First, let me say that I did not testify on June 1, 1990, because I arrived about 10 minutes late due to difficulty in finding the hearing site. I asked the receptionist where I should go and she said to be seated and someone would come and get me. I sat there for at least 45 minutes and after Mr. Peake and his attorney came out, I again asked the receptionist to let someone know I was there. A man came out and said since I was not there when he started the hearing, I could not testify. After asking him what I could do now, he finally said I could appeal the decision after I received it, if necessary. * * * "

The letter also detailed why he felt he was terminated without just cause.

The full board of review issued what can best be described as a canned-form decision with the operative words being:

"Upon consideration thereof, and upon a review of the entire record, the Board concludes that said application to institute a further appeal should be disallowed."

Corbin then appealed to the Franklin County Court of Common Pleas, which affirmed the actions of the board of review. The judgment of the common pleas court has now been appealed to this court. Two errors have been assigned for our review:

"I. The court of common pleas committed error by affirming the erroneous and unreasonable determination by the administrative agency failing and refusing to reopen the evidentiary hearing following timely presentation of good cause for his absence by claimant, thus serving to deny claimant his fundamental right to a fair and impartial hearing.

"II. The court of common pleas committed error by affirming the determination of the administrative agency that claimant was discharged for just cause in connection with work, and failing to find that the order of the administrative agency was unreasonable, unlawful, and/or against the manifest weight of the evidence, and thereupon ruling accordingly."

█ The first assignment of error attacks the conduct of the board of review in failing to provide Corbin with a full and fair opportunity to present his view of the facts surrounding his firing. Nothing in the record disputes his version of what occurred when he arrived at the hearing site. The transcript of the hearing before the referee indicates a hearing of sufficient duration which indicates that, in all likelihood, the hearing was still in progress when appellant arrived. Conceivably, the hearing had not started, if appellant is accurate in his estimate that he waited forty-five minutes before he saw his former supervisor leave. The transcript contains no indication that the referee inquired about appellant's presence before ending the hearing or that he made any effort to ascertain whether appellant was waiting outside at the time the hearing actually commenced.

R.C. 4141.28(J) mandates that all interested parties are to be afforded a reasonable opportunity for a fair hearing:

"When an appeal from a decision on reconsideration of the administrator or deputy is taken, all interested parties shall be notified and the board or a referee shall, after affording such parties reasonable opportunity for a fair hearing, affirm, modify, or reverse the findings of fact and the decision of the administrator or deputy in the manner which appears just and proper. * * * The board and the referees shall take any steps in such hearings, consistent with the impartial discharge of their duties, which appear reasonable and

necessary to ascertain the facts and determine whether the claimant is entitled to benefits under the law. * * * "

The record shows that appellant was duly notified as to the date and time of the scheduled hearing. He was not, however, as a result of arriving ten minutes late, afforded an opportunity to be heard. Based on the limited record before us, it appears that the hearing lasted over forty-five minutes. Therefore, the referee could have afforded appellant a reasonable opportunity to be heard before adjourning, had he taken reasonable steps to ascertain the status of appellant's availability. Since the referee failed to make such an inquiry and was not informed by his staff as to appellant's availability, or was informed but did not act upon that information, appellant was not afforded a reasonable opportunity for a fair hearing, contrary to R.C. 4141.28(J), based on the record in this case.

In addition, R.C. 4141.28(J)(2) allows for a ten-day period during which the party not pursuing the appeal before the board of review, in this case appellant Corbin, may make a showing of good cause to the referee why he failed to appear for the hearing. In pertinent part, R.C. 4141.28(J)(2) provides:

"If the party appearing fails to appear at the hearing, the referee or the board shall dismiss the appeal, provided due notice of the hearing was mailed to such party's last known address and good cause for such failure to appear is not shown the referee or the board within ten days after the hearing date, or within fourteen days if the reason the party failed to appear was because he was working. No further appeal from such decision may thereafter be instituted by such party. If the other party fails to appear at such hearing, the referee or the board shall proceed with the hearing and shall issue a decision without further hearing, provided due notice of the hearing was mailed to such party's last known address and good cause for his failure to appear is not shown that referee or the board within ten days after the hearing date * * *."

According to the record, appellant spoke with someone who purportedly was the referee immediately following the hearing and indicated he had been available to participate, but he was never called into the hearing. Appellant's showing of good cause, therefore, falls within the ten-day requirement of R.C. 4141.28(J)(2). The general language of R.C. 4141.28 does not directly address the issue of a party who is available to participate in a hearing but is denied access to that hearing. It does mandate that a referee *"shall"* take steps which appear reasonable and necessary to ascertain the facts. The referee should have, under the dictates of due process, delayed making his determination until after appellant was afforded a reasonable opportunity to be heard.

For the foregoing reasons, the board of review should have afforded appellant an opportunity to be heard. Accordingly, the first assignment of error is sustained.

■ The second assignment of error attacks the factual determinations made at the board of review and subsequently affirmed in the court of common pleas. This assignment of error is also sustained.

The apparent reason that appellant was fired was the conclusion of his supervisor that appellant had turned off the gas and then turned it back on, thereby putting people at the school at risk. However, the actual evidence, as ascertained from the memoranda generated at the time, was:

"* * * Jack said he found the gas valve and he would shut it off.

"* * *

"Monday morning Donnie told me when he entered the school it was still hot, so he checked the compressor and restarted it by taping [*sic*] the pressure switch with his hand. I told him that Jack was supposed to have turned off the gas on Sunday. Donnie told me the shut off was still on when he checked." (Employer's Exhibit 2, pages 2–4.)

Given appellant's utter lack of knowledge of the heating and cooling system, there is no reason to believe that, once he found the valve in question, he would be able to succeed in turning the gas off. More important, there is *no* evidence that appellant ever turned the gas back on. In fact, the memorandum which constitutes page 4 of the Employer's Exhibit 2 indicates that the gas was never turned off, although the otherwise unnamed "Donnie" could no more say that the valve was never turned off than the supervisor could say that it was.

Part of what seems to have affected the referee in the proceedings before him was an allegation that the malfunction of the thermostat somehow caused a risk of a gas explosion. However, no evidence indicated the presence of a gas leak at any time, especially when appellant was in the building. Although the malfunction of the thermostat unquestionably made the school unreasonably hot, unreasonable heat does not equate with a risk of a gas explosion.

Given the utter lack of evidence to prove that appellant did the act for which he was fired, the court of common pleas abused its discretion in failing to find that the decision of the board of review was unreasonable and against the manifest weight of the evidence. Pursuant to R.C. 4141.28(O), the trial court should have reversed the finding of the board of review and entered final judgment that appellant was terminated without just cause, thereby entitling him to unemployment compensation.

As was noted in *Hardman v. Bur. of Unemp. Comp.* (C.P.1964), 94 Ohio Law Abs. 257, at 262, 28 O.O.2d 162, at 165, 200 N.E.2d 825, at 828:

"The Court is aware that, in the absence of restrictions upon an employer as may often be found in a contract of employment, an employer has a right to discharge an employee with or without just cause, but the Court must emphasize that, to deny such employee the benefit of unemployment compensation, the record must disclose that his discharge was for 'just cause,' and that such finding must be based on relevant probative evidence appearing in the record.  * * * To hold otherwise would not only do violence to the liberal construction the Act itself enjoins upon the Court (see § 4141.46, R.C.), but would make a mockery of the Unemployment Act.  It would place an employee at the mercy of a whim or caprice of his employer, so that, if he wished to discharge him, he could merely claim dissatisfaction with his work, and thus not only discharge him, which he may have a legal right to do, but also deny him the benefits which the Act intends an employee to have and which can be denied him only in the event his discharge is for 'just cause.'  It may be inconvenient to an employer to organize and submit probative evidence of an employee's inadequacy when unemployment compensation benefits are sought, but this is a burden which must be assumed, otherwise the Act becomes meaningless and ineffective.  * * * * "

Therefore, we do what we believe the court of common pleas should have done.  The judgment below is reversed and this cause is remanded to the Franklin County Court of Common Pleas with instructions to enter final judgment on behalf of appellant.

*Judgment reversed*
*and cause remanded*
*with instructions.*

BOWMAN, P.J., and PEGGY BRYANT, J., concur.