[Cite as *Midwest Terminals of Toledo Internatl., Inc. v. Dir., Ohio Dept. of Job & Family Servs.*, 2016-Ohio-973.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

Midwest Terminals of Toledo
International, Inc.

        Appellant

v.

Director, Ohio Department of Job &
Family Services, et al.

        Appellees

Court of Appeals No. L-15-1193

Trial Court No. CI0201501313

**DECISION AND JUDGMENT**

Decided:   March 11, 2016

* * * * *

Ronald L. Mason and Aaron T. Tulencik, for appellant.

Mike DeWine, Ohio Attorney General, and Eric A. Baum,
Managing Attorney, for appellee.

* * * * *

**PIETRYKOWSKI, J.**

{¶ 1} This is an administrative appeal from a judgment of the Lucas County Court

of Common Pleas which affirmed the decision of the Ohio Unemployment Compensation

Review Commission that Don Russell was discharged from appellant Midwest Terminals of Toledo International, Inc. ("Midwest") without just cause and was therefore entitled to unemployment compensation benefits.   Midwest now challenges that judgment through the following assignment of error:

> The underlying administrative decision is unlawful, unreasonable and/or against the manifest weight of the evidence because the record evidence establishes that Mr. Russell was discharged for just cause.

{¶ 2} This assignment of error raises the same issue that was before the trial court. We further note that the standard of review applied by both this court and the common pleas court in an appeal from a just cause determination is the same. *Tzangas, Plakas & Mannos v. Ohio Bur. of Emp. Serv.*, 73 Ohio St.3d 694, 696, 653 N.E.2d 1207 (1995). That is, the decision of the review commission will only be reversed if the court finds that the decision was unlawful, unreasonable, or against the manifest weight of the evidence. R.C. 4141.282(H).

{¶ 3} This court has fully and carefully reviewed the record and the law which is applicable to the facts of this case.   We find that the June 19, 2015 opinion and judgment entry of the trial court is an appropriate and lawfully correct discussion of the facts and law involved in this administrative appeal.   We therefore adopt the trial court's opinion and judgment entry (see Appendix A) and find appellant's assignment of error not well-taken.

2.

{¶ 4} On consideration whereof, the court finds that substantial justice has been done the party complaining and the judgment of the Lucas County Court of Common Pleas is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.                                _____
                                                                  JUDGE

Arlene Singer, J.

                                _____
James D. Jensen, P.J.                                       JUDGE
CONCUR.

                                _____
                                                                   JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.sconet.state.oh.us/rod/newpdf/?source=6.

APPENDIX A

**IN THE COURT OF COMMON PLEAS, LUCAS COUNTY, OHIO**

| | | |
|---|---|---|
| Midwest Terminals of Toledo International, Inc., | * | Case No.: CI15-1313 |
| | * | Honorable Gene A. Zmuda |
| Plaintiff-Appellant, | * | |
| vs. | * | |
| | * | **OPINION AND JUDGMENT ENTRY** |
| Director, Ohio Department of Jobs and Family Services, et al., | * | |
| Defendants-Appellees. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

This case comes before the Court on an administrative appeal filed by Plaintiff-Appellant Midwest Terminals of Toledo International, Inc. (Aplaintiff@) on January 27, 2015 from a decision of the Ohio Unemployment Compensation Review Commission dated January 8, 2015 which held that Defendant-Appellee Don Russell ("Russell") was discharged without just cause in connection with his work and therefore was entitled to unemployment compensation benefits.

Plaintiff filed its merit brief on March 26, 2015. Defendant-Appellee Director, Ohio Job and Family Services ("ODJFS") filed its merit brief on May 8, 2015. Plaintiff filed a reply brief on May 21, 2015. The matter having been fully briefed is now decisional.

4.

A brief summary of the proceedings in this matter are as follows.

Russell applied for unemployment compensation benefits on May 27, 2014 and was initially allowed benefits under an ODJFS decision issued on June 12, 2014. (TRP,[1] Initial Application, May 27, 2014). ODJFS issued another determination on September 16, 2014 which disallowed Russell's unemployment compensation benefits due to his employment discharge by plaintiff on August 23, 2014. (TRP, ODJFS Determination, September 16, 2014). On October 9, 2014, the Director of ODJFS issued a redetermination affirming the September 16, 2014 decision and transferred jurisdiction to the Unemployment Compensation Review Commission ("UCRC"). (TRP, Director's Redetermination, October 9, 2014).

Russell appealed the October 9, 2014 Redetermination Decision and a hearing was ultimately held on November 12, 2014 by Hearing Officer Nadine Pettiford. (TRP, Transcript of Testimony, November 12, 2014). On November 19, 2014, Hearing Officer Nadine Pettiford rendered her decision reversing the Director's Redetermination Decision issued on October 9, 2014. (TRP, Hearing Officer's Decision, November 19, 2014).

Hearing Officer Nadine Pettiford made the following findings of fact in her November 19, 2014 Decision:

> "Claimant, Don Russell, worked as a laborer for Midwest Terminals of Toledo International, Inc. from April 15, 2014 until August 24, 2014. In this capacity, claimant's duties included carrying a remote control to control the hydraulics on a conveyor while loader operators loaded product on the conveyor on the ground. The conveyor goes up a belt. Claimant was responsible for telling loader operators when to start and stop loading. Claimant was discharged for allegedly violating company policy.

---

[1]Transcript of the Records of Proceedings for the Unemployment Compensation Review Commission ("TRP").

The employer has a progressive discipline policy which provides for verbal warning, written warning, disciplinary layoff, and termination of employment.

The employer's policies prohibit the use of cell phones or other phones while working. Claimant, as a union official, was permitted to briefly take union calls, as long as it did not conflict with his work. Claimant was aware of the policies.

On October 23, 2012 (sic), claimant was verbally warned for cell phone usage. On July 10, 2014, claimant was given a written warning for being distracted by his cell phone. Claimant was informed that he was subject to discipline up to and including termination if he failed to modify his behavior.

On or around August 23, 2014, a spill occurred on the ship while product was being loaded. Mr Leach was notified by phone of the spill. He immediately reported to the ship location, where he observed several feet of petroleum koke product spilled on the deck. He attempted to question claimant about what happened and claimant repeatedly told him it was not his fault. Mr. Leach told claimant to get his things and leave so that he could conduct an investigation. Claimant refused to leave. He told Mr. Leach that he had a 'company man' working and not a 'union man' and that he was going back to work. Claimant disregarded Mr. Leach's instructions and returned to work, until the police department was notified and assisted claimant from the ship.

One of the ship mates reported that claimant was 'on his phone and appeared to be texting and had his back turned to the loading cargo spilled onto the deck waist deep.' This individual was not present at the hearing to testify. Claimant denies that he was on his phone. He also denies that he had his back to the operation. Claimant states that he asked an individual to move the conveyor and that, instead, the ship was moved from the dock and that that (sic) is what caused the product to overflow approximately two feet.

On August 23, 2014, claimant was discharged.

Claimant received unemployment benefits of $376.00 for the week ending September 6, 2014." (TRP, November 19, 2014 Decision by Hearing Officer Nadine Pettiford, pp.3-4).

Hearing Officer Nadine Pettiford determined that:

"The employer presents hearsay testimony and evidence in support of an allegation that claimant was properly discharged for violating company policy by being on his cell phone on August 23, 2014, while he was supposed (sic) to be working. The facts do establish that the employer does have a policy which prohibits the use of cell phones. Despite this policy, union officials are permitted to use their phones but it must not conflict with their work. Claimant was a union official. Employees are subject to progressive disciplinary action for violating policies. Claimant was aware of these policies. Prior to August 23, 2014, claimant was progressively disciplined for various matters.

While it is contended that claimant violated the cell phone policy on August 23, 2014, no witness with personal knowledge of the circumstances of that day was present to testify with the exception of claimant. Claimant states that he was not on the cell phone with his back to the operation, and that the spill occurred because the ship was moved by someone else. The firsthand, sworn testimony, is more credible than the unsworn statement from the other individual. While claimant disregarded the instructions of the director of operations to leave the ship so that he could conduct an investigation, claimant was not discharged for disregarding instructions. The sole reason that claimant was discharged was for reportedly being on his cell phone when he should have been working, and the Hearing Officer finds that insufficient evidence was presented to establish this to be true. It is held that claimant was discharged by Midwest Terminals of Toledo International, Inc. without just cause in connection with work." (TRP, November 19, 2014 Decision by Hearing Officer Nadine Pettiford, pp.4-5).

Hearing Officer Nadine Pettiford also determined that:

"It has been held that claimant had a non-disqualifying separation on August 23, 2014. Therefore, claimant was not overpaid benefits for the week ending September 6, 2014, as a result of this decision." (TRP, November 19, 2014 Decision by Hearing Officer Nadine Pettiford, p.5).

On December 9, 2014, plaintiff timely filed a Request for Review before the UCRC of the Hearing Officer's November 19, 2014 Decision. (TRP, Request for Review, December 9, 2014). On January 8, 2015, the UCRC issued its Decision Disallowing plaintiff's Request for Review. (TRP,

7.

UCRC Decision, January 8, 2014). Plaintiff timely filed its Notice of Appeal with this Court on January 27, 2015.

This is an unemployment compensation appeal under Ohio Revised Code '4141.282. R.C. '4141.282 sets forth the rights an interested party may have to appeal a final decision of the UCRC to a court of common pleas. Specifically, R.C. '4141.282(H) states that:

> "The court shall hear the appeal on the certified record provided by the commission. If the court finds that the decision of the commission was unlawful, unreasonable, or against the manifest weight of the evidence, it shall reverse, vacate, or modify the decision, or remand the matter to the commission. Otherwise, the court shall affirm the decision of the commission." *Id.*

The duty or authority of the court in hearing such an administrative appeal is to determine whether the decision of the board is supported by the evidence in the record. *Kilgore v. Bd. of Review* (1965), 2 Ohio App. 2d 69, 71. The fact that reasonable minds might reach different conclusions is not a basis for the reversal of the board's decision. *Craig v.. Bur. of Unemp. Comp.* (1948), 83 Ohio App. 247, 260. The Common Pleas Court in such an appeal is not authorized to make a finding of facts or to substitute its judgment for that of the Board of Review. The parties thereto are not entitled to a trial *de novo*, *Kilgore v. Board of Review* (1965), 2 Ohio App.2d 69, paragraph two of the syllabus by the Court; rather, "judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." *C. E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St. 2d 279, syllabus by the Court (Ohio 1978).

8.

To be eligible for unemployment compensation benefits in Ohio, claimants must satisfy the criteria established pursuant to R.C. 4141.29(D)(2)(a), which provides, in pertinent part, that:

> "(D) * * * No individual may * * * be paid benefits * * *:
>
> * * *
>
> (2) For the duration of his unemployment if the administrator finds that:
>
> (a) He quit his work without just cause or has been discharged for just cause in connection with his work * * *." R.C. '4141.29(D)(2)(a).

"The claimant has the burden of proving entitlement to unemployment compensation benefits under this statutory provision. *Shannon v. Bur. of Unemp. Comp.* (1951), 155 Ohio St. 53; *Canton Malleable Iron Co. v. Green* (1944), 75 Ohio App. 526; 54 Ohio Jurisprudence 2d (1962), Unemployment Compensation, Section 35." *Irvine v. State, Unemployment Compensation Bd. of Review* (1985), 19 Ohio St.3d 15, 17. "Just cause for dismissal exists when an employee's actions demonstrate an unreasonable disregard for an employer's best interests." *Janovsky v. Ohio Bureau of Empl. Servs.*, 108 Ohio App. 3d 690, 694 (Ohio Ct. App., Montgomery County 1996). Traditionally, just cause, in the statutory sense, is that which, to an ordinarily intelligent person, is a justifiable reason for doing or not doing a particular act. *Peyton v. Sun T.V.* (1975), 44 Ohio App. 2d 10, 12. "The determination of what constitutes just cause must be analyzed in conjunction with the legislative purpose underlying the Unemployment Compensation Act, essentially, the Act's purpose is 'to enable unfortunate employees, who become and remain involuntarily unemployed by adverse business and industrial conditions, to subsist on a reasonably decent level and is in keeping with the humanitarian and enlightened concepts of this modern day.'" *Leach v. Republic Steel Corp.* (1964), 176 Ohio St. 221, 223; in accordance with *Nunamaker v. United States Steel Corp.*

(1965), 2 Ohio St. 2d 55, 57. "Just cause for discharge may be established by proof that the employee violated a specific company rule or policy." *Jones v. Bd. of Review* (Sept. 28, 1993), 10th Dist. No. 93AP-430, 1993 Ohio App. LEXIS 4788.

The Unemployment Compensation Act "'was intended to provide financial assistance to an individual who had worked, was able and willing to work, but was temporarily without employment through no fault or agreement of his own.'" *Irvine* at 17; citing *Salzl v. Gibson Greeting Cards* (1980), 61 Ohio St.2d 35, 39. The Ohio Supreme Court in *Tzangas, Plakas & Mannos v. Administrator, Ohio Bureau of Employment Servs.*, 73 Ohio St. 3d 694 (Ohio 1995), found that:

> "The Act does not exist to protect employees from themselves, but to protect them from economic forces over which they have no control. When an employee is at fault, he is no longer the victim of fortune's whims, but is instead directly responsible for his own predicament. Fault on the employee's part separates him from the Act's intent and the Act's protection.
>
> If an employer has been reasonable in finding fault on behalf of an employee, then the employer may terminate the employee with just cause. Fault on behalf of the employee remains an essential component of a just cause termination." *Id.* at 697-698.

Plaintiff contends that it acted appropriately in discharging Russell for just cause due to his improper use of his cell phone while performing the duties of a conveyor operator resulting in a cargo spill. Plaintiff argues that the Hearing Officer's Decision is unreasonable and against the manifest weight of the evidence because of the inconsistency in Russell's testimony and the finding that the statement from an eyewitness was insufficient evidence. The inconsistencies in Russell's testimony includes: 1) the height of the cargo spill; 2) Russell's knowledge that he was terminated on August 23, 2014; 3) Russell testifying that he did not know he was terminated until early September; and 4) Russell testifying that he had not talked to Mr. Leach or anyone in

10.

management about his cell phone and/or the August 23rd incident since August 23, 2014. Plaintiff further argues that the totality of the evidence in the record establishes that Russell was at fault for the cargo spill for using his cell phone and therefore, discharged for just cause. Plaintiff asks this Court to overturn the Hearing Officer's Decision and reinstate the Director's October 9, 2014 Redetermination Decision.

ODJFS argues that the review commission's decision should be affirmed because it is not unlawful, unreasonable, or against the manifest weight of the evidence and the record contains competent, credible evidence that Russell did not violate company policy. ODJFS asserts that the firsthand knowledge of Russell was weighed against Mr. Leach's testimony, who was not present at the time of the cargo spill, Mr. Blakely's secondhand testimony, and a written statement from a third party who claims to have witnessed the incident but a person who may have some responsibility for the spill itself as he was a shipmate involved with the cargo loading operation. ODJFS also contends that the author of the written statement was not in attendance for the hearing and therefore could neither be cross examined nor have his credibility gauged by the finder of fact. Therefore, ODJFS asks this Court to affirm the Review Commission's Decision.

Plaintiff does not raise an issue that the November 19, 2014 Decision was unlawful, but has argued that the decision was unreasonable[2] and against the manifest weight of the evidence.

"In considering if the decision is against the weight of the evidence the court must consider the evidence heard by the Board or a referee and properly admitted by the Board or the

---

[2]The context in which plaintiff argues the November 19, 2014 Decision to be unreasonable is that Russell's inattention to his job duties demonstrated an unreasonable disregard for plaintiff's best interest. (Plaintiff's Merit Brief, pp.7-8). However, plaintiff's real argument is that the Decision was against the manifest weight of the evidence as bourne through the inconsistent testimony of Russell.

referee." *Simon v. Lake Geauga Printing Co.* (1982), 69 Ohio St. 2d 41, 45. Moreover, in comparing live testimony verses a submitted written statement, Court's have held that "to give credibility to the written statements of a person not subject to cross-examination because he did not appear at the hearing and to deny credibility to the claimant testifying in person makes a mockery of any concept of a fair hearing. *Shirley v. Admr. OBES* (Oct. 11, 1978), Hamilton App. No. C77431." *ISAAC v. O.B.E.S.*, 1985 Ohio App. LEXIS 7431 (Ohio Ct. App., Cuyahoga County Mar. 21, 1985). A reviewing court can reverse only if the verdict is so manifestly contrary to the natural and reasonable inferences to be drawn from the evidence as to produce a result in complete violation of substantial justice. *Sambunjak v. Board of Review* (1984), 14 Ohio App.3d 432, paragraph 2 of the syllabus by the Court.

During the November 12, 2014 hearing, Hearing Officer Nadine Pettiford heard testimony from Terry Leach, Director of Operations for plaintiff, Christopher Blakely, Human Resource Manager for plaintiff, and Don Russell. Neither Mr. Blakely nor Mr. Leach were present at the time of the cargo spill but Mr. Leach did arrive at the site shortly after the spill. The only witness who testified that had firsthand knowledge of the incident was Mr. Russell.

Mr. Leach testified that Mr. Russell was terminated for phone usage in violation of policy 3100 and neglect of duty. (Transcript of Testimony, pp.6, 10-11). Mr. Leach further testified that Mr. Russell carried a remote control that controlled the hydraulics on a stationary conveyor as product was loaded onto the conveyor from the ground and the product continues up the conveyor belt going into the hole of the vessel with Mr. Russell controlling the amount to be loaded. (Transcript of Testimony, p.6). Mr. Leach also testified that one of the deck hands on the ship told him that Mr. Russell had his back to the conveyor and was talking on his cell phone as they were trying to get Mr. Russell's attention. (Transcript of Testimony, p.7). When Mr. Leach first arrived on

12.

the ship, he testified that he spoke briefly with Mr. Russell who told him the cargo spill was not his fault. (Transcript of Testimony, p.7).

Mr. Russell testified that Mr. Leach fired him for an issue with his phone but never told him on the day of the cargo spill what the specific problem was. (Transcript of Testimony, pp.26-27). Mr. Russell further testified that he was not on his cell phone at the time of the spill and did not have his back to the conveyor. (Transcript of Testimony, pp.30-32). Mr. Russell also testified that he and another shipmate were trying to top off the cargo container and instead of moving the conveyor, the shipmate moved the entire ship which caused some of the product to overfill and spill onto the deck. (Transcript of Testimony, p.31).

After a review and examination of the witness testimony offered at the hearing, Hearing Officer Nadine Pettiford found that there was a company policy in place prohibiting the use of cell phones unless the individual was a union official which allowed limited use and that Mr. Russell was aware of the policy which subjected employees to a progressive disciplinary process. Ms. Pettiford also found that the only witness with firsthand knowledge was Mr. Russell and he testified that he was not on his cell phone with his back to the operation at the time of the spill. Ms. Pettiford further found that Mr. Russell's testimony was more credible than an unsworn statement from another individual and the sole reason for Mr. Russell's discharge was for use of his cell phone. Thus, Ms. Pettiford determined that Mr. Russell was discharged without just cause.

It is well settled that "the burden is on the employer to establish an employee's misconduct to demonstrate just cause." *ISAAC v. O.B.E.S.*, 1985 Ohio App. LEXIS 7431, 9-10 (Ohio Ct. App., Cuyahoga County Mar. 21, 1985). This obligation "may be inconvenient to an employer to organize and submit probative evidence of an employee's inadequacy when unemployment compensation benefits are sought, but this is a burden which must be assumed, otherwise the Act becomes

13.

meaningless and ineffective." *Corbin v. Ohio Bureau of Employment Services*, 77 Ohio App. 3d 626, 632 (Ohio Ct. App., Franklin County 1991).

Plaintiff only offers the unsworn, written statement of shipmate Jeremy MacDougall to establish that Mr. Russell was on his cell phone and had his back to the conveyor at the time of the spill. Plaintiff failed to provide any testimony of Mr. MacDougall or affidavit attesting to this fact during the November 12, 2014 hearing. Plaintiff merely relied on Mr. Leach's testimony as to the investigation he conducted.

"The determination of whether just cause exists to support discharge depends on the factual circumstances of each case and is largely an issue for the trier of fact. *Irvine v. Unemployment Comp. Bd. of Review* (1985), 19 Ohio St.3d 15. "Determination of purely factual questions is primarily within the province of the hearing officer and the commission." *Id.* at 17. * * *. "The duty or authority of the courts is to determine whether the decision of the board is supported by the evidence in the record." *Id.* at 18. If some competent, credible evidence supports the commission's decision, the reviewing court, whether a common pleas court or court of appeals, must affirm. *Crisp v. Scioto Residential Servs., Inc.*, Scioto App. No. 03CA2918, 2004 Ohio 6349, at P12.

The Tenth District Court of Appeals in *Brooks v. Ohio State Dep't of Job & Family Servs.*, 2009-Ohio-817, P22 (Ohio Ct. App., Franklin County Feb. 24, 2009), found that:

> "Bearing in mind that appellant has the burden of proof, this court finds the commission's decision that appellant was terminated for just cause by the employer is not unlawful, unreasonable or against the manifest weight of the evidence. As a reviewing court, we must defer to the commission's credibility assessments and factual determinations."

The only arguments asserted by plaintiff as to the Hearing Officer's Decision being unreasonable and against the manifest weight of the evidence involve the inconsistency of

14.

Russell's testimony and the failure to give any weight to the written statement of the eye witness, Third Officer Jeremy MacDougall. Ohio case law is clear that the factual determinations and credibility of the witnesses is left to the hearing officer and the commission and a common pleas court in reviewing a Hearing Officer's Decision must give deference to those findings.

Consequently, after carefully reviewing the evidence submitted by the parties in this case, including, but not limited to, the Transcript of Testimony of the November 12, 2014 hearing before Hearing Officer Nadine Pettiford, written statement from Jeremy MacDougall, briefs and arguments of counsel, Ohio Revised Code Section 4141.29(D)(2)(a), and all relevant case law, the Court finds that the decision by Hearing Officer Nadine Pettiford was not so manifestly contrary to the natural and reasonable inferences to be drawn from the evidence as to produce a result in complete violation of substantial justice. *Sambunjak*, supra. Therefore, the Court finds that the Hearing Officer's November 19, 2014 Decision was not unlawful, unreasonable, or against the manifest weight of the evidence. R.C. '4141.282(H). Thus, UCRC's January 8, 2015 Decision disallowing plaintiff's request for review is AFFIRMED.

The ruling herein is a full and complete adjudication of all issues incipient in Midwest Terminals of Toledo International, Inc.'s Notice of Appeal as they relate to Don Russell and a complete adjudication of all genuine issues, merits and matters in controversy between the parties. It appears there is no just cause for further delay, and that, pursuant to Civ. R. 54, Final Judgment should be entered for defendants Don Russell and Director, Ohio Department of Job and Family Services.

_____          _____
Date                                                             Judge Gene A. Zmuda

15.