ABEX CORPORATION, Employer-Appellant,

v.

Gertrude A. TODD, Claimant-Appellee,

and

Employment Security Commission, Appellee.

Superior Court of Delaware.

New Castle.

Oct. 24, 1967.

Richard I. G. Jones (of Prickett, Ward, Burt & Sanders), Wilmington, for Abex Corp., employer-appellant.

Harvey B. Rubenstein, Wilmington, for Gertrude A. Todd, claimant.

STIFTEL, President Judge.

This is an appeal from an unemployment compensation award to Gertrude A. Todd by the Unemployment Security Commission (hereinafter "Commission"). The

sole question is whether the Commission properly found Mrs. Todd was discharged without just cause.

In 1956, Abex Corporation hired Mrs. Todd as a cost clerk. Shortly afterward, she was assigned to the payroll computation department. In 1965, she was one of several Abex employees who campaigned for union representation. In January, 1966, a majority of Abex employees voted for the union in an election conducted by the National Labor Relations Board. After the union victory, Mrs. Todd's supervisor, Mr. Robert Lobue, began to discover certain errors in Mrs. Todd's work. In January, 1966, he discovered that she had failed to calculate New Year's holiday payroll rates for incentive (piecework) laborers. (Hereinafter this error is referred to as "the New Year's error"). In March, he disciplined Mrs. Todd for crediting an employee for double time on a Sunday when he had not worked, and for which there was no time card ("the March error"). Finally, in April Mr. Lobue discovered that Mrs. Todd had erroneously included overtime in her Good Friday calculation ("the Good Friday error"). Thereupon, he discharged her. Mrs. Todd then claimed unemployment compensation, alleging that she was discharged for union activities.

The controversy is whether Mrs. Todd is entitled to unemployment compensation. The relevant statute, 19 Del.Code § 3315(2), disqualifies an employee from benefits, *inter alia*, if she has been discharged for "just cause". The Claims Deputy found that Mrs. Todd had not been discharged for just cause. The Referee reversed the decision of the Deputy. The Commission reversed the Referee, finding that the discharge was without just cause, and after a partial rehearing, the Commission reaffirmed its findings, which are summarized as follows:

(1) Mrs. Todd's work had been satisfactory for ten years. For that period, no fault had been found with her work.

(2) After the union's victory, the employer, Abex, began to treat her differently.

It refused to allow her to work overtime; it paid closer attention to her work; it found errors, and then discharged her.

(3) The errors for which she was discharged were inadvertent. These errors included failure to revise the incentive workers' payroll rates in January, and posting the erroneous Sunday hours in March. The Good Friday payrate miscalculation was due to using the wrong rate and the fact that Mrs. Todd was not told what was wrong until the day she was fired. By implication, the Good Friday error made in April was also inadvertent.

█ Assuming the above findings to be proper, the question arises whether inadvertent errors constitute "just cause" under 19 Del.Code § 3315(2). Although there are no published Delaware cases defining "just cause", that concept has been defined in other jurisdictions. Generally, the term "just cause" refers to a wilful or wanton act in violation of either the employer's interest, or of the employee's duties, or of the employee's expected standard of conduct. See 48 Am.Jur., "Social Security", Sec. 38, p. 541 (defining misconduct justifying denial of compensation). See also Annot., 146 A.L.R. 243, Hardman v. Board of Review, etc., 94 Ohio Law Abst. 257, 200 N.E. 2d 825 (Ct.C.P.Ohio, 1964); Murrin v. Unemployment Compensation Board of Review, 199 Pa.Super. 583, 186 A.2d 438 (1962); Schock v. Board of Review, etc., 89 N.J.Super. 118, 214 A.2d 40 (1965). However, Mrs. Todd was discharged for "inadvertent" acts. Although inadvertence may include negligence, it does not include such conduct as is designated by the term "wanton". Nor does inadvertence mean "wilful". See 20A, Words and Phrases, "Inadvertence", pp. 43–44. Hence, the Commission's findings of inadvertence, if proper, are sufficient to negate "just cause".

█ The issue thus arises whether the Commission's findings are proper. In testing the propriety of Commission findings, the Superior Court looks only to determine

if they are supported by substantial evidence on the record. See Air Mod Corp. v. Newton, Del., 215 A.2d 434 (1965); General Motors Corp. v. Freeman, 3 Storey 74, 164 A.2d 686 (1960). Under this standard, questions of credibility and conflicts in the evidence are resolved by the Commission, General Motors Corp. v. McNemar, Del., 202 A.2d 803 (Supreme Ct., 1964), while the Court determines only whether there is satisfactory proof to support a factual finding. Johnson v. Chrysler Corp., Del., 213 A.2d 64 (Supreme Ct., 1963); M. A. Hartnett, Inc. v. Coleman, Del., 226 A.2d 910 (Supreme Ct., 1967). Therefore, the question presented is whether the finding that Mrs. Todd was fired for inadvertent error is supported by substantial evidence.

■ At the various hearings, conflicting evidence was introduced by both sides on the question of whether Mrs. Todd's "March error" (mistakenly posting overtime to an employee) was inadvertent. Mr. Lobue testified that upon confronting Mrs. Todd with the fact of her error, she had no excuse.[1] However, Mrs. Todd testified that at the time, she wasn't sure that "her handwriting was posted".[2] In any case, even if she had committed the error, she explained that "If I hadn't been out sick, I would have caught it".[3] Although both versions of the incident are sufficient, the Commission was entitled to believe Mrs. Todd. Since it could have found that Mrs. Todd made the March error while sick, it could find that the error was inadvertent.

The Commission also found as inadvertent the "New Year's error" (Mrs. Todd's failure to revise the holiday payrates.). But in this instance, the Commission found improperly. At the hearing before the Referee, Mrs. Todd testified that she knowingly failed to revise the rates since 1963.[4]

Nor did she repudiate this admission at the hearing before the Board. Moreover, both she and Mr. Lobue testified that her failure to revise the payrates was the reason for her suspension in January.[5] From this evidence, the Commission could have found the New Year's error to be wilful. It could not have found the error to be inadvertent. Therefore, its finding was incorrect.

Nonetheless, that finding is not fatal. For three reasons the Commission could still have found that Mrs. Todd was discharged for inadvertent errors.

First, after Mr. Lobue discovered the New Year's error, he suspended Mrs. Todd but did not discharge her. From this fact, the Commission could infer that she was fired not for the New Year's error, but for the error committed on Good Friday.

Second, the Commission could have found that the Good Friday error was not wilful. Assuming the New Year's error was intentional, if Mrs. Todd had repeated the same error on Good Friday, then Abex would have discharged her for good cause. But the April error differed from that committed on New Year's. The latter involved Mrs. Todd's failure to calculate new incentive payrates. In April she did calculate new rates. The error was in her method of calculation. Under the union contract, the proper rate base included "straight time earnings for the first four pay periods of the calendar month preceding the one in which the holiday falls." Mr. Lobue testified that the above provision clearly excluded any use of overtime hours in calculating the incentive workers' rate base. The proper base was a normal forty hour pay period. Mrs. Todd erred in that she wrongly included overtime hours in the rate base calculation. After Mr. Lobue discovered Mrs. Todd's error, he discharged her.

1. R. 169–170.

2. R. 92.

3. R. 91.

4. "Well, I knew that I hadn't been doing the holiday—getting a new rate each holiday. And I knew that I was in the wrong there, and that's what I thought was wrong * * * and it was my belief that because I hadn't done it for two and one half years" (R. 34).

5. R. 88, 160.

Third, there was sufficient evidence to support a finding that the Good Friday error was inadvertent and not wanton. Mrs. Todd testified she was suspended in January for failure to revise the payrates.[6] But when she did revise the payrates in April, she interpreted the contract to mean "total hours" of work per pay period. Mrs. Todd added that, during that calculation she was very careful.[7] She further testified that Mr. Lobue had never told her what she was doing wrong, giving her the impression that her only error was failure to revise the payrates.[8] Mr. Lobue even admitted that the only specific instructions given Mrs. Todd consisted of showing her the contract provision and telling her to see him if she had any questions.[9] From this evidence the Commission, at best, could have found that Mrs. Todd made a good faith but erroneous interpretation of the contract provision containing her instructions. It could also have found her error to be negligent, and caused concurrently by Mr. Lobue's negligent failure to correct Mrs. Todd's misapprehensions more affirmatively. Either view of the evidence would have supported a finding that Mrs. Todd was discharged for inadvertent error.

To be sure, there was also evidence from which the Commission could have found that the Good Friday error was wilful or wanton. However, the Commission was entitled to believe Mrs. Todd's version of the controversy. So long as the Commission's interpretation of the evidence is itself supported by substantial evidence on the record, the Court will uphold that interpretation. The foregoing recital indicates substantial evidence that Mrs. Todd was discharged for inadvertent acts. Consequently, the decision of the Commission is affirmed. It is so ordered.

6. R. 100.

7. "So when he had given me the first two weeks disciplinary he gave me the impression it was because I didn't have it revised * * * so on my Good Friday I was very careful." (R 92–93).

8. "I just went back to work and he didn't tell me that I had been doing the payroll and the calculations wrong, my impression was that it was because I didn't have a revised, up to date [rate], but he didn't say nothing." (R. 90).

