SUPERIOR COURT
OF THE
STATE OF DELAWARE

T. HENLEY GRAVES
*RESIDENT JUDGE*

SUSSEX COUNTY COURTHOUSE
1 THE CIRCLE, SUITE 2
GEORGETOWN, DE 19947
(302) 856-5257

Kathryn Phillips
29275 North Oak Grove Road
Seaford, Delaware 19973

**Re:** *Phillips v. Unemployment Insurance Appeals Board*;
     **C.A. No. S15A-12-004**

On Appeal from the Unemployment Insurance Appeals Board: AFFIRMED

Date Submitted:     May 20, 2016
Date Decided:      June 28, 2016

Dear Ms. Phillips:

Kathryn Phillips appeals the decision of the Unemployment Insurance Appeals Board ("the Board") finding Ms. Phillips had been discharged from her place of employment for just cause in connection with that employment. The Board's decision is affirmed for the reasons stated below.

**Nature and Stage of the Proceedings**

Ms. Phillips worked as a commissioned sales associate for the furniture store Johnny Janosik ("Employer") from October 9, 2013, until Employer discharged her on May 22, 2015. Ms. Phillips filed a claim for unemployment benefits, which was denied by a Claims Deputy on August 4, 2015. The Claims Deputy concluded Employer discharged Ms. Phillips for her failure to comply with Employer's attendance policy. Ms. Phillips appealed this determination and an Appeals Referee held a hearing on the matter on August 25, 2015. The Appeals Referee heard testimony from Ms. Phillips and Employer's representative, Wendy Revel. By way of written

decision mailed September 17, 2015, the Appeals Referee affirmed the Claims Deputy's decision. Ms. Phillips subsequently filed an appeal with the Board. The Board held a hearing on the matter on December 2, 2015. Ms. Phillips and Ms. Revel testified before the Board. By way of written decision mailed December 15, 2015, the Board affirmed the Appeals Referee's decision. Ms. Phillips filed a timely appeal with this Court and the matter is ripe for decision.

## Discussion

When reviewing a decision of the Board, this Court must determine whether the Board's findings and conclusions of law are free from legal error and are supported by substantial evidence in the record.[1] "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[2] The Court's review is limited: "It is not the appellate court's role to weigh the evidence, determine credibility questions or make its own factual findings, but merely to decide if the evidence is legally adequate to support the agency's factual findings."[3]

Section 3314 of Title 19 of the Delaware Code provides, in pertinent part, that one shall be disqualified for unemployment benefits if she has been "discharged from [her] work for just

---

[1] *Unemployment Ins. Appeal Bd. v. Martin*, 431 A.2d 1265 (Del. 1981); *Pochvatilla v. U.S. Postal Serv.*, 1997 WL 524062 (Del. Super. June 9, 1997); 19 *Del. C.* § 3323(a) ("In any judicial proceeding under this section, the findings of the [Board] as to the facts, if supported by evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of the Court shall be confined to questions of law.").

[2] *Gorrell v. Division of Vocational Rehab.*, 1996 WL 453356, at *2 (Del. Super. July 31, 1996).

[3] *McManus v. Christiana Serv. Co.*, 1997 WL 127953, at *1 (Del. Super. Jan. 31, 1997).

cause in connection with [her] work."[4] "Generally, the term 'just cause' refers to a wilful or wanton act in violation of either the employer's interest, or of the employee's duties, or of the employee's expected standard of conduct."[5] In a termination case, the employer has the burden of proving just cause.[6]

Violation of a reasonable company policy may constitute just cause for termination, provided the employee is aware of the policy and the fact that the violation thereof may result in the employee's termination.[7] Knowledge of a company policy may be established by evidence of a written policy, *i.e.*, an employer's handbook.[8]

In this case, the Board made the following findings of fact and conclusions of law:

> The Board finds that the Employer has a relevant attendance policy. That policy states, in pertinent part,
>
>> If you are unable to report to work at your scheduled time, for any reason, you must notify the supervisor on duty within 30 minutes of your scheduled starting time. It is not acceptable to leave a message with another associate or to send an email stating such absence. If your absence continues for more than one day, call your supervisor each day. Your supervisor will want to know the reason for your absences and the length of time you expect to be away.
>
> Claimant acknowledged receipt of this policy on October 9, 2013. Claimant was mailed a designation notice that stated that Claimant must provide information regarding her medical condition no later than May 20, 2015 in order to determine

---

[4] 19 *Del. C.* § 3314(2).

[5] *Abex Corp. v. Todd*, 235 A.2d 271, 272 (Del. Super. 1967).

[6] *Burgos v. Perdue Farms, Inc.*, 2011 WL 1487076, at *2 (Del. Super. Apr. 19, 2011).

[7] *Id.*

[8] *Id.*

3

whether [the Family Medical Leave Act ("FMLA")] applied to Claimant's leave. On May 20, 2015, Claimant called the Employer and was told to call in every day she anticipated being absent. Claimant failed to call or appear for work after May 20th and was terminated.

As such, [a] majority of the Board finds that the Claimant was aware of the relevant attendance polity and failed to comply with it. This conduct rises to the level of willful and wanton. For the foregoing reasons, the Board finds, in a 3-1 majority decision, that Employer has met its burden and hereby affirms the decision of the [Appeals] Referee.[9]

Ms. Phillips argues on appeal that the Board erred in (a) finding Ms. Phillips last made contact with Employer on May 20, 2015; (b) finding Employer had met its burden of proof to establish Ms. Phillips was discharged with just cause; and (c) finding Ms. Phillips was properly and accurately informed of an established attendance policy and FMLA policies.

The undisputed facts are as follows. Ms. Phillips suffered from ongoing medical symptoms that interfered with her ability to work. On April 24, 2015, Ms. Phillips approached Ms. Revel, Employer's Human Resources Manager, and inquired about FMLA leave. At that time, Ms. Revel provided Ms. Phillips with paperwork necessary to process a FMLA leave request. Ms. Phillips provided the paperwork to a health clinic where she was seen by a nurse practitioner. The health clinic faxed the certification required by the United States Department of Labor to process a FMLA leave request to Employer on May 11, 2015. This paperwork indicated Ms. Phillips would remain out of work for medical reasons until May 20, 2015.

Upon her review, Ms. Revel concluded the certification did not contain the information essential to process the paperwork for FMLA leave. Ms. Revel left a voice message for Ms. Phillips on May 14, stating she needed additional information in order to process the FMLA

---

[9] Record of the proceedings below, at 108 (hereinafter, "Record, at __").

paperwork.[10] Ms. Phillips returned Ms. Revel's phone call on May 19. At that time, Ms. Revel informed Ms. Phillips that she was only approved to be out on FMLA until May 20. Ms. Revel told Ms. Phillips that Employer needed additional information from her treating physician to authorize further FMLA leave.[11] Ms. Phillips informed Ms. Revel she had a follow up doctor's appointment on June 1.

The parties dispute what happened next. Ms. Revel testified when she spoke with Ms. Phillips on May 19, she explained to Ms. Phillips her options. One of those options was that, if Ms. Phillips felt she was unable to return to work after May 20, she would need to keep in daily contact with Employer. An email from John Runge, Employer's sales manager, to Ms. Revel dated May 21 was admitted into evidence. In that email, Mr. Runge wrote that he left a voice mail for Ms. Phillips on May 21, asking her to contact him and provide updated information. A follow-up email from Mr. Runge to Ms. Revel dated May 29 was also admitted into evidence. In that email, Mr. Runge informs Ms. Revel he had not had any communication with Ms. Phillips after he left her a voice mail on May 21 in which he asked her to contact him. Ms. Revel testified she directed Mr. Runge to terminate Ms. Phillips' employment on May 23 due to Ms. Phillips' failure to contact Employer.

Ms. Phillips introduced the voice mail Mr. Runge left for her on May 21 into evidence. He left the following message:

---

[10] Ms. Revel also mailed the paperwork to Ms. Phillips; however, Ms. Phillips did not receive this paperwork as it was mailed to the address on file, which happened to be incorrect.

[11] Although it is of no consequence to these proceedings, Ms. Revel testified that, although the FMLA paperwork was incomplete, she treated Ms. Phillips' absences until May 20 as authorized under FMLA.

It's John Lunge [sic], it's 2:50 on the 21st. Just calling to see how you're doing. Do me a favor, I know that you had spoken or left a message with Ron in regards to some discrepancy about dates. I know that per your discussion with Wendy was [sic] some date I believe like the 20th of May for the FMLA. Do me a favor and just call us as my discussion I had with you last week, if you're not going to be in after the 20th just to let us know what days you're not going to be in until you get your paperwork situated or give Wendy a call please and let her know what's going on. I'm here till about 5:00 if not a little bit later, and I'll be here every day up until Monday, I'm off on Tuesday. Thank you very much, hope you feel better. Take care.

Ms. Phillips noted this voice mail does not specifically direct her to call in every day after May 20. Ms. Phillips testified she "contacted" Mr. Runge on May 21 after receiving his voice mail and provided him with a "block of dates" when she would not be reporting for work.[12] Ms. Phillips believed she was clear to be out of work at least until her scheduled doctor's appointment on June 1.

On appeal, Ms. Phillips attempts to reargue the facts of the case and attacks the veracity of Employer's evidence. Unfortunately for Ms. Phillips and as stated above, this Court must review the case on the record and may not make factual findings. Moreover, this Court may not weigh questions of witness credibility.[13]

Ms. Revel admitted into evidence a copy of Employer's Attendance Policy, which provides in pertinent part:

If you are unable to report to work at your scheduled time, for any reason, you must notify the supervisor on duty within 30 minutes of your scheduled starting time. It is *not* acceptable to leave a message with another associate or to send an email stating such absence. If you absence continues for more than one day, call

---

[12] Ms. Phillips did not indicate whether she spoke directly with Mr. Runge or left a voice mail message for him.

[13] *McCoy*, 1996 WL 1111126, at *3 ("It is within the discretion of the Board, not the court[,] to weigh the credibility of witnesses and to resolve conflicting testimony.").

6

your supervisor each day. You supervisor will want to know the reason for your absence and the length of time you expect to be away.

The Attendance Policy also includes Employer's "No Call - No Show" policy. That policy provides:

All employees are expected to inform their department of absences/tardiness whenever possible. Employees who fail to contact their department's supervisor cause others to take on additional duties or result in a reduction of services to customers. An employee, who fails to notify his/her department's supervisor of any absence in accordance with the department's policy, will be subject to Couching and Counseling as follows:

- 1st failure to notify of absence - One day unpaid Suspension

- 2nd failure to notify of absence - Termination

Ms. Phillips acknowledged receipt of the Attendance Policy with her signature on October 9, 2013. She also admitted she was aware of the policy on the record.

Although the Board did not specifically address Ms. Phillips' contention that she had, in fact, contacted her supervisor on May 21, the Board clearly gave great weight to Mr. Runge's email of May 29, wherein he stated he had not had further contact with Ms. Phillips after leaving her a voice mail message on May 21. Whether Ms. Phillips failed to call out of work on May 21 and 22 or May 22 and May 23 is irrelevant. The bottom line is that Ms. Phillips was obligated to report to Employer daily until she was able to obtain medical documentation sufficient to allow Ms. Revel to process her FMLA leave application. Ms. Phillips failed to do so. Her failure to do so constituted a violation of Employer's Attendance Policy of which Ms. Phillips was aware. After Ms. Phillips failed to call in to work on two occasions, her failure to comply with the policy resulted in her termination as outlined by the Attendance Policy.

Ms. Phillips argues she was not sufficiently educated on the process of filing for FMLA

7

leave. Assuming, without deciding, Employer had an affirmative duty to explain the FMLA leave application process to Ms. Phillips, Ms. Phillips testified Ms. Revel took "a considerable amount of time to explain" the process to her.[14] Ms. Phillips was not discharged for failing to obtain documentation necessary to process her request under FMLA[15] but for her failure to comply with a known company policy. As such, she was discharged with good cause. The Court finds the Board's decision is supported by substantial evidence and is free from legal error.

## Conclusion

For the reasons stated herein, the Board's decision disqualifying Ms. Phillips from receiving unemployment benefits is AFFIRMED.

IT IS SO ORDERED.

Very truly yours,

T. Henley Graves

oc:     Prothonotary

cc:     Johnny Jonasik, Inc.
        Unemployment Insurance Appeals Board

---

[14] Record, at 51.

[15] The Court notes Ms. Phillips did not, however, obtain documentation from her treating physician at her June 1 appointment because, at that time, Ms. Phillips was aware she had been discharged and did not see any reason to secure documentation to process the FMLA paperwork.

8