IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

CAPITOL CLEANERS,                           :
                                            : C.A. No.  K17A-08-001 WLW
                   Appellant,               :
                                            :
        v.                                  :
                                            :
JOSEPH PEDROTTY and THE                     :
DELAWARE DEPARTMENT OF                      :
LABOR UNEMPLOYMENT                          :
INSURANCE APPEAL BOARD,                     :
                                            :
                   Appellees.               :


Submitted: February 5, 2018
Decided: May 2, 2018

**ORDER**

Upon the Appeal from the Decision of the
Unemployment Insurance Appeal Board.
*Affirmed.*


Daniel F. McAllister, Esquire of Baird Mandalas Brockstedt, LLC, attorney for the
Employer-Appellant.

Carla A.K. Jarosz, Esquire of the Delaware Department of Justice, attorney for the
UIAB-Appellee.

Joseph Pedrotty, *pro se*, Employee-Appellee


WITHAM, R.J.

This is an appeal filed by the employer, Capitol Cleaners, Inc. (hereinafter, the "Employer"), from a decision of the Unemployment Insurance Appeal Board (hereinafter, the "Board"), affirming the Appeals Referee's determination that the Employer's prior employee, Joseph Pedrotty (hereinafter, the "Employee"), was discharged from his employment without "just cause." For the reasons set forth below, the decision of the Board is AFFIRMED.

## FACTUAL AND PROCEDURAL BACKGROUND

On August 12, 2015, the Employer hired the Employee as the Chief Financial Officer ("CFO") for the Employer.

On March 17, 2017, the Employer forced the Employee to resign due to numerous claimed infractions. Thereafter, on that same day, the Employee filed for unemployment benefits with the Delaware Department of Labor, whereby a Claims Deputy for the Division of Unemployment Insurance conducted a fact-finding interview.

On April 5, 2017, the Claims Deputy issued a decision, based on the fact-finding interview.[1] The Claims Deputy determined that the Employer discharged the Employee without "just cause" in connection with the Employee's work.[2] Therefore, the Employee was not disqualified from receiving unemployment insurance benefits

---

[1] R. at 19.

[2] *Id.*

2

pursuant to 19 *Del. C.* § 3314(2).[3] The Employee was also eligible to receive benefits for each week of unemployment insurance benefits claimed for which the Division of Unemployment determined that the Employee met the eligibility requirements of 19 *Del. C.* § 3315.[4]

On April 10, 2017, the Employer appealed the Claims Deputy's decision.[5] In a hearing before the Appeals Referee, the Employer presented uncontested documentary evidence related to the Employee's termination. The first document, included as Exhibit 1 to the Referee's Decision, constituted a memorandum (hereinafter, the "Final Written Warning") that memorialized a verbal conversation between the Employer's Chief Executive Officer, Stuart Outten, and the Employee.[6] The Final Written Warning, in part, emphasized that Mr. Outten had informed the Employee on multiple occasions that the Employee was not to issue any disbursements on behalf of the Employer without Mr. Outten's approval.[7] If the Employee continued to issue disbursements without approval, the Final Written Warning stipulated that the Employee would be fired.[8] The Employee signed the

---

[3] *Id.*

[4] *Id.*

[5] R. at 23.

[6] R. at 110.

[7] *Id.*

[8] *Id.*

3

Final Written Warning, in apparent understanding of its' terms.[9] The second document, included as Exhibit 2 to the Referee's Decision, constituted email correspondence between Mr. Outten and the Employee, whereby the parties discussed the Employee's progress in satisfying certain healthcare reporting requirements for the Employer.[10]

In addition to the documentary evidence, the Employer presented the in-person testimony of Mr. Outten and James Teagle, the Employer's Plant Manager. Mr. Outten described numerous issues with the Employee's performance of his duties. For instance, Mr. Outten discovered that the Employee lied about his progress regarding the healthcare reporting requirements.[11] The Employee, in fact, had not made any progress at the time he responded to Mr. Outten's email.[12] The Employee also failed to make timely payments related to payroll, wage garnishments, and child support.[13] As a direct result, Mr. Teagle was late in making several payments for his personal vehicle.[14] The Employee was permitted to cross-examine these witnesses, as well as present testimony of his own.

---

[9] *Id.*

[10] R. at 111.

[11] R. at 36-39.

[12] *Id.*

[13] R. at 39-43.

[14] R. at 46-49.

In his testimony, the Employee described the difficulties that he faced throughout his short employment. He claimed, in essence, that his poor performance was due to the fact that he felt overworked and overwhelmed.[15] But, the Employee admitted that Mr. Outten informed him on January 13, 2017, by way of the Final Written Warning, that he was no longer permitted to make any disbursements on behalf of the Employer without Mr. Outten's approval.[16] The Employee testified that he complied with this directive by presenting invoices and bills to Mr. Outten, who then either approved or rejected disbursement of the Employer's funds.[17] Although, on at least one occasion, the Employee did not adhere to the typical procedure, stating instead that:

> I was trying – I thought I was helping [Mr. Outten] out, so I – I had signed all the payroll checks – uh, and – uh, prior to, but I – I – uh, I told him, but he wasn't around at that – at that particular time, so I just signed them, so I could get it out to the employees. I didn't want the employees not to get their checks.[18]

Nevertheless, despite the Employee's poor performance, the Appeals Referee was unable to find willful or wanton misconduct, or any prior pattern of misconduct

---

[15] *See* R. at 49-81.

[16] R. at 76 (where the Employee acknowledged that he received the Final Written Warning from Mr. Outten).

[17] R. at 66-67.

[18] R. at 82-83.

5

on the part of the Employee.[19] Therefore, the Appeals Referee determined that the Employee was not disqualified from the receipt of unemployment benefits because the Employer failed to meet its' burden to establish "just cause" for the Employer's discharge of the Employee.[20]

On May 1, 2017, the Employer appealed the Appeals Referee's decision to the Board.[21] In a hearing before the Board, the Employer again presented the in-person testimony of Mr. Outten. Mr. Outten, clarifying his previous testimony before the Appeals Referee, stated that he specifically informed the Employee that, in accordance with the Final Written Warning, the Employee was not allowed to sign checks on behalf of the Employer.[22] Yet, according to Mr. Outten, even after his explicit direction, the Employee signed numerous checks without Mr. Outten's authorization.[23] The checks in question, signed by the Employee, are included as Exhibit 1 to the Board's decision.[24] Additionally, the Employer presented the in-person testimony of the Employer's current office manager, Louis Armstrong. Ms. Armstrong testified that one of the reasons the Employee was restricted from signing

---

[19] R. at 107.

[20] *Id.*

[21] R. at 114.

[22] R. at 131.

[23] R. at 132-35.

[24] R. at 183-190.

6

checks was because he had previously made "double payments" to a supplier.[25] Again, the Employee was permitted to cross-examine the Employer's witnesses, as well as present testimony of his own.

The Employee once more emphasized that his performance for the Employer suffered because he felt overworked and overwhelmed. He also admitted that he signed the checks, introduced as Exhibit 1, but denied not having the approval to do so. For example, the Employee stated, "I think, at the time, I – I signed these checks, either I told [Mr. Outten] I was gonna do it, maybe he doesn't recall."[26] Furthermore, he stated, "I don't think I did this behind his back because, you know, after getting this – this, uh memo or this – uh, directive, uh, I would have asked him. I would have asked him on everything on this."[27] The Employee, on cross-examination, also stated that, "I think [Mr. Outten] was bus[y] – he said, just – just, you know, 'Sign them and get,' you know, 'Get – get them out.'"[28]

After reviewing the competing testimony presented to the Board, as well as the evidence presented to the Appeals Referee, the Referee's decision, and the Employer's Notice of Appeal, the Board determined that the Employee did have the

---

[25] R. at 138-142.

[26] R. at 151.

[27] *Id.*

[28] R. at 155.

authority to sign the checks provided to the Board.[29] Conversely, the Board found Mr. Outten's testimony, regarding the same issue, was not credible.[30] The Board also determined that Mr. Outten did not appropriately "follow-up" after he issued the Final Written Warning to the Employee.[31] Thus, the Board found that the Employer failed to meet its' burden of proving that it had "just cause" to terminate the Employee.[32]

On August 3, 2017, the Employer appealed the Board's decision to this Court.[33] The Employer raises three issues on appeal. The first issue, in essence, alleges that the Board erred in finding the Employee's testimony[34] more credible than Mr. Outten's testimony.[35] In support of this contention, the Employer emphasizes that: (a) the Employee's assertion before the Board, that he never issued any disbursements without Mr. Outten's approval, apparently conflicts with the Employee's prior testimony, before the Appeals Referee, that he personally signed a series of payroll checks while Mr. Outten was unavailable; (b) the Employee agreed that portions of

---

[29] R. at 180.

[30] *Id.*

[31] *Id.*

[32] *Id.*

[33] R. at 195.

[34] That he obtained Mr. Outten's approval to sign the checks included as Exhibit 1 to the Board's Decision.

[35] That he did not approve the Employee to sign the disputed checks.

8

Mr. Outten's testimony were accurate; (c) the Employee signed the checks, included as Exhibit 1 to the Board's decision, despite the Employee's testimony that his common practice, after the Final Written Warning, was to present checks to Mr. Outten to sign; and (d) unlike the Employee's testimony, Mr. Outten's testimony remained consistent in all aspects throughout both hearings before the Appeals Referee and the Board. The second issue on appeal, alleges that the Board's determination that the Employer "did not appropriately follow up" after issuing a final written warning is not supported by substantial evidence, nor does it constitute a sufficient legal basis for ruling that the Employee is qualified to receive unemployment benefits. The third issue on appeal, alleges that the Board ignored Ms. Armstrong's testimony regarding the Employee's intentional evasion of the Employer's accounting software.

## STANDARD OF REVIEW

The Superior Court is limited in its' review to "a determination of whether the Board's decision is supported by substantial evidence and free from legal error."[36] Substantial evidence is that "relevant evidence that a reasonable mind might accept as adequate to support a conclusion."[37] It is "more than a scintilla but less than a preponderance."[38] In reviewing the record for substantial evidence, the Court will

---

[36] *Starkey v. Unemp't Ins. Appeal Bd.*, 340 A.2d 165, 166 (Del. Super. 1975).

[37] *Wyatt v. Rescare Home Care*, 81 A.3d 1253, 1258 (Del. 2013) (internal citations omitted).

[38] *Olney v. Cooch*, 425 A.2d 610, 614 (Del. 1981) (quoting *Cross v. Califano*, 475 F.Supp. 896, 898 (D. Fla. 1979)).

consider the record in the light most favorable to the party prevailing below.[39] However, the "[C]ourt is not authorized to make its own factual findings, assess credibility of witnesses or weigh the evidence."[40] Instead, the Court merely decides "if the evidence is legally adequate to support the agency's findings."[41]

## DISCUSSION

*The Board's Credibility Determination*

As to the Employer's first contention, the Court must clarify that its role, as the reviewing Court, is simply to ascertain if the Board's conclusions are supported by substantial evidence and free from legal error.[42] If this standard is satisfied, the Board's resolution of evidentiary and credibility conflicts is conclusive.[43] In a discharge case, an employer has the burden of proving, by a preponderance of the evidence, that the claimant was terminated for "just cause."[44] Where, as here, the

---

[39] *Gen. Motors Corp. v. Guy*, 1991 WL 190491, at *3 (Del. Super. Aug. 16, 1991).

[40] *Sokoloff v. Bd. of Med. Practice*, 2010 WL 5550692, at *5 (Del. Super. Aug. 25, 2010).

[41] *Bradfield v. Unemp't Ins. Appeal Bd.*, 2012 WL 5462844, at *1 (Del. Super. Mar. 13, 2012) (quoting *McManus v. Christiana Serv. Co.*, 1997 WL 127953, at *1 (Del. Super. Jan. 31, 1997)).

[42] *Air Mod Corp. v. Newton*, 215 A.2d 434, 438 (Del. 1965).

[43] *Ridings v. Unemp't Ins. Appeal Bd.*, 407 A.2d 238, 239 (Del. Super. 1979) (citing *Abex Corp. v. Todd*, 235 A.2d 271 (Del. Super. 1967)).

[44] *Wilson v. Unemp't Ins. Appeal Bd.*, 2011 WL 3243366, at *2 (Del. Super. Jul. 27, 2011) (citing *Country Life Homes, Inc. v. Unemp't Ins. Appeal Bd.*, 2007 WL 1519520, at *3 (Del. Super. May 8, 2007); *MRPC Fin. Mgmt. LLC v. Carter*, 2003 WL 21517977, at *4 (Del. Super. Jun. 20, 2003)).

party bearing the burden of proof fails to convince the Board below, the resulting findings of fact can be overturned by the Court "only for errors of law, inconsistencies, or capricious disregard for competent evidence."[45]

After a comprehensive review of the record in this case, the Court finds that the Employer has failed to overcome the heavy burden for overturning the Board's credibility determination, particularly because the evidence identified by the Employer is not as clearly damning as the Employer urges. The Employee's apparent admission, for instance, indicates that he signed a series of payroll checks while Mr. Outten was allegedly unavailable to grant his approval. However, the Employer leaves out a key piece of the Employee's testimony, as the Employee also stated that he had previously told Mr. Outten that he intended to issue the payroll disbursements. Thus, the Board could have reasonably inferred that Mr. Outten gave the Employee approval to sign those particular payroll checks on Mr. Outten's behalf, possibly in anticipation of Mr. Outten's unavailability. Based on the facts presented to the Board, it is not implausible for the Board to infer. And, as a result, the Employee's apparent admission does not conflict with his subsequent testimony before the Board, that he never issued any disbursements without Mr. Outten's approval.

Similarly, the fact that Mr. Outten typically gave his approval to the Employee for disbursements by signing checks himself, does not mean that he never permitted the Employee to sign checks on Mr. Outten's behalf after obtaining Mr. Outten's

---

[45] *Id.* (citing *Ridings,* 407 A.2d at 239).

approval. Although Mr. Outten claims that he never did, as discussed in the previous paragraph, the Employee's testimony illustrates that Mr. Outten may have given the Employee approval to do so on at least one occasion. Seeing as the parties' contentions directly contradict, the Board was entirely within its discretion to credit the Employee's testimony over the Employer's.

Next, in regards to the Employee's agreement that a portion of Mr. Outten's testimony was accurate, the Court finds that such a concession should not require the Board to accept all of Mr. Outten's testimony as credible. Especially because, after considering the Employee's quoted testimony provided by the Employer, it is apparent that the Employee never actually admitted that he issued checks without Mr. Outten's approval.[46] Rather, he merely agreed, as he did on numerous occasions throughout his testimony, that Mr. Outten informed him that he would be terminated

---

[46] *See* The Employer's Opening Brief at 8, quoting the following testimony by the Employee:

BOARD MEMBER ONE: I just have one [question]. The statement from the CEO, were you told that you would be terminated if there were no changes made?

[THE EMPLOYEE]: Pardon?

BOARD MEMBER ONE: That statement, from the CEO, that there was a conversation that you would be terminated if the problems would not be fixed?

[THE EMPLOYEE]: Right. Right. He did, that's – that is correct in what he said. So –

BOARD MEMBER ONE: That's all I needed. You answered my question.

[THE EMPLOYEE]: Yeah.

if the problems with his performance did not improve.[47] This mere agreement to an already undisputed fact, therefore, does not mandate that the Board accept all of Mr. Outten's testimony as credible.

In sum, the Court holds that the evidence identified by the Employer does not warrant the overturning of the Board's credibility decision.

*The Employer's Failure to "Follow-Up"*

As to the Employer's second contention, the Court agrees that the Board's finding was curious. The Board's decision provides in part that, "the Employer, after issuing a final written warning about signing checks without authorization, did not appropriately follow-up."[48] But, the Board did not indicate how it came to this conclusion. Nor did the Board identify the legal basis for considering the waiver of an Employer directive. Nonetheless, since the Board's finding constituted only a single consideration in the Board's ultimate decision to grant the Employee benefits, the Court holds that this issue is *de minimus*. Accordingly, under these circumstances, the Employer's second contention does not merit reversal.

*Ignoring Ms. Armstrong's Testimony*

As to the Employer's third argument, the Court concedes that the Board did not address Ms. Armstrong's testimony in the Board's final analysis. Nevertheless, after reviewing the Employer's closing argument before the Board, the Employer did not

---

[47] *Id.*

[48] R. at 180.

raise the Employee's issuing of double payments to a supplier as grounds for finding "just cause" for his termination.[49] Instead, the Employer focused entirely on the Employee's purported failure to comply with the Final Written Warning, which the Court notes was drafted, in part, as a result of the double payments.[50] Consequently, the Court concludes that this contention was not "fairly presented"[51] before the Board and it cannot now constitute grounds for relief from the Board's decision because, "issues not properly raised before an agency or board may not be raised on appeal."[52]

## CONCLUSION

For all of the foregoing reasons, the decision of the Unemployment Insurance Appeal Board is **AFFIRMED.**

**IT IS SO ORDERED.**

/s/ Hon. William L. Witham, Jr.
Resident Judge

WLW/dmh

---

[49] R. at 161-65.

[50] *See* R. at 142 (where Ms. Armstrong stated "Yes, indeed" in response to the following question by the Employer's counsel: "Was it your understanding that it was these types of double payments that were contributing to – or that contributed to the restriction that Mr. Olten [sic] placed on – on [the Employee's] ability to write checks?").

[51] *See Delstar Indus., Inc. v. Delaware Dept. of Labor Div. of Unemp't Ins. Appeals Bd.*, 1997 WL 27109, at *6 (Del. Super. Jan. 8, 1997).

[52] *Id.* (citing *Wilmington Trust Co. v. Conner*, 415 A.2d 773, 781 (Del. 1981); *Tatten Partners, L.P. v. New Castle County Bd. Of Assessment Review*, 642 A.2d 1251, 1262 (Del. Super. 1993)).