IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| VERRONA A. HARRIS, | ) | |
| | ) | |
| Claimant-Below, | ) | C.A. No. K18A-08-005 NEP |
| Appellant, | ) | In and for Kent County |
| | ) | |
| v. | ) | |
| | ) | |
| BAYHEALTH MEDICAL CENTER, INC., and | ) | |
| | ) | |
| | ) | |
| Employer-Below, | ) | |
| Appellee, | ) | |
| | ) | |
| UNEMPLOYMENT INSURANCE | ) | |
| APPEAL BOARD. | ) | |

## ORDER

Submitted: December 3, 2018
Decided: February 21, 2019

Appellant/Claimant Verrona Harris (hereinafter "Ms. Harris") has appealed a decision of the Unemployment Insurance Appeal Board (hereinafter the "UIAB") denying her unemployment benefits because she was discharged from her employment with Bayhealth Medical Center, Inc. (hereinafter "Bayhealth") for just cause. The Court's review is confined to the facts contained in the record, and it is those facts that are referenced herein. For the reasons set forth below, the decision of the UIAB is **AFFIRMED.**

### I. Factual Background and Procedural History

Ms. Harris worked at Bayhealth as a Food Service Supervisor from August 30, 2004, through March 20, 2018. Ms. Harris was terminated on the latter date due to fraud, falsification, or alteration of documents, including those used to

calculate pay; theft; and violation of Bayhealth's values, accountability, and integrity, among other reasons.

According to the record, Bayhealth maintained an "Electronic Facilities and Equipment Policy" (hereinafter the "Electronic Policy") prohibiting the sharing of passwords. Specifically, the Electronic Policy states that "Bayhealth employees… shall not afford or facilitate third party access to any electronic facilities at any time: e.g., permitting another employee… to use your password to access e-mail when that employee has not been granted access to e-mail."[1] The Electronic Policy goes on to state that "[e]mployees engaging in inappropriate use of Bayhealth owned/leased electronic facilities will be subjected to disciplinary action up to and including termination of employment."[2]

Ms. Harris was required to sign and acknowledge receipt of Bayhealth's Electronic Policy, and she received training on the Electronic Policy in January of 2016, 2017, and 2018. The training included information regarding HIPAA compliance as well as data privacy and security. Additionally, the training included specific information pertaining to password protection and stated that "[a]ll passwords are unique (just for you) and cannot be shared whether for e-mail or other software access."[3]

Bayhealth also utilized a reward program and application, known as "Driven," whereby employees could be awarded recognition points by coworkers for outstanding service. According to Bayhealth, "[t]he Driven program is a program utilized by Bayhealth employees to reward and recognize each other for

---

[1] *See* "Use of Bayhealth Medical Center Electronic Facilities and Equipment," at § 5.4.

[2] *Id*. at § 10.3. Bayhealth also maintained a "Corrective Action Policy," which indicates that any "Category 4 Offense" will result in immediate termination and includes, among other actions, "fraud, falsification, or alteration of documents, including those used to calculate pay," violating HIPAA laws, and intentional breach of employee confidentiality. *See* "Corrective Action Policy," at § 6.4.

[3] *See* "HIPAA Compliance Course."

going 'above and beyond' in the workplace...."[4] Recipients could accumulate points which could then be used on items or gift cards or could be converted to a monetary dollar amount, e.g. 1,000 points equated to a monetary value of $10.

In February 2018, Bayhealth received a complaint that Ms. Harris was allegedly taking advantage of the Driven program. Bayhealth conducted an investigation into the complaint and discovered that Ms. Harris had been signing into the Driven program using other employees' usernames and passwords and had been awarding herself recognition points to be redeemed under her account.[5] Bayhealth was able to trace the login information to Ms. Harris and determine that Ms. Harris was logging into accounts from both inside and outside of Bayhealth between July 2017 and February 2018 and that Ms. Harris had utilized the login credentials of a number of Bayhealth employees. It was discovered that Ms. Harris had accumulated 387,000 points, which equated to $3,870. According to the record, Ms. Harris did not dispute that she had accessed her coworkers' accounts in order to award herself recognition points, but she asserted that she had received their permission to do so.

Bayhealth deemed Ms. Harris's conduct to be fraudulent, and in violation of the Driven program and the Electronic Policy. Pursuant to the Corrective Action Policy, Ms. Harris's conduct was considered fraud constituting a Category 4 offense, meriting immediate termination of employment.

Ms. Harris filed a claim for unemployment benefits with the Delaware Department of Labor, Division of Unemployment Insurance. The Department of

---

[4] *See* "Corrective Action Policy."

[5] According to the record, members of the HR employee relations team had also previously met with Ms. Harris in 2016, as she was "commonly the top recognized individual in the organization, receiving a much higher number of recognitions per month than any other employee." At this meeting, Ms. Harris was asked if she had coerced other employees into giving her their points and was "made aware at this time that it did appear that she was gaming the system."

Labor issued its Notice of Determination on May 3, 2018, and found Ms. Harris disqualified from receipt of unemployment benefits, holding that her actions constituted "willful or wanton misconduct." Ms. Harris filed a timely appeal of that Notice of Determination, and a hearing was held on June 4, 2018, before an Appeals Referee. The Appeals Referee issued her Decision the same day, finding that Ms. Harris had been discharged for just cause. Ms. Harris then filed an appeal to the UIAB.

A hearing was held before the UIAB on August 16, 2018. On that date, the UIAB issued its decision affirming the Appeals Referee's Decision that Ms. Harris had been discharged for just cause. The UIAB found sufficient evidence showing that Ms. Harris had violated Bayhealth's policy prohibiting the use of coworkers' passwords and logins.[6] The UIAB therefore found that Ms. Harris had been discharged for just cause and was disqualified from the receipt of unemployment benefits.[7] Additionally, the UIAB stated that Ms. Harris's evidence "purporting to show that her coworkers gave her permission – even if it was of record – does not overcome or negate the evidence showing her [in] violation of [Bayhealth's] policy against accessing other employees' electronic accounts." Ms. Harris timely appealed to this Court on August 24, 2018.

## II. Standard of Review

An appeal from an administrative board's final order to this Court is confined to a determination of whether the board's decision is supported by substantial evidence and is free from legal error.[8] Evidence is substantial when it is

---

[6] *See Wilson v. Unemployment Ins. Appeal Bd.*, 2011 WL 3243366, at *2 (Del. Super. Jul. 27, 2011) ("Violation of a reasonable company rule may constitute just cause for discharge if the employee is aware of the policy and the possible subsequent termination.").

[7] 19 *Del. C.* § 3314(2).

[8] *E.g., Unemployment Ins. Appeal Bd. Dept. of Labor v. Duncan*, 337 A.2d 308, 308 (Del. 1975); *Thompson v. Christiana Care Health System*, 25 A.3d 778, 781–82 (Del. 2011).

4

such that a reasonable mind might accept as adequate to support a conclusion.[9] The board's findings are conclusive and will be affirmed if supported by "competent evidence having probative value."[10] The appellate court does not weigh the evidence or make its own factual findings,[11] but merely determines if the evidence is legally adequate to support the board's factual findings.[12]

### III. Discussion

Pursuant to 19 *Del. C.* § 3314(2), a claimant is not eligible for benefits when the claimant was terminated from employment for "just cause." "Just cause" is defined as a "willful or wanton act in violation of either the employer's interest, or of the employee's duties, or of the employee's standard of conduct."[13] This Court uses a two-step analysis in evaluating "just cause": 1) whether a policy existed, and if so, what conduct was prohibited, and 2) whether the employee was apprised of the policy, and if so, how the employee was made aware.[14] Knowledge of a company policy may be established by evidence of a written policy, such as an employer's handbook, or by previous warnings of objectionable conduct.[15]

In this case, Ms. Harris's sole argument for reversal relates to the merits of the UIAB's decision. Ms. Harris argues that she has been an upstanding employee for approximately 14 years and has "upheld every professional and moral code of ethics." Ms. Harris states that she did not receive any warnings prior to her

---

[9] *Histed v. E.I. Dupont deNemours & Co.*, 621 A.2d 340, 342 (Del. 1993).

[10] *Geegan v. Unemployment Compensation Commission*, 76 A.2d 116, 117 (Del. Super. 1950).

[11] *Johnson v. Chrysler Corp.*, 213 A.2d 64, 66 (Del. 1965).

[12] 29 *Del. C.* § 10142(d).

[13] *Abex Corp. v. Todd*, 235 A.2d 271, 272 (Del. Super. 1967).

[14] *Wilson*, 2011 WL 3243366, at *2 ("Violation of a reasonable company rule may constitute just cause for discharge if the employee is aware of the policy and the possible subsequent termination."); *see also McCoy v. Occidental Chem. Corp.*, 1996 WL 111126, at *3 (Del. Super. Feb. 7, 1996); *Parvusa v. Tipton Trucking Co., Inc.*, 1993 WL 562196, at *4 (Del. Super. Dec. 1, 1993).

[15] *McCoy*, 1996 WL 111126, at *3.

termination and that she was "unaware that the policy does not permit the sharing of points with my fellow team members as I was never furnished a copy of the program policy." Moreover, Ms. Harris asserts that she did not steal any Driven points or defraud Bayhealth, but was instead granted permission to access her coworkers' accounts and award herself their points.

Looking first to Ms. Harris's argument that she did not receive adequate notice about her termination, this Court disagrees. As an initial matter, "the absence of advanced warning concerning the *consequences* of given acts, as opposed to notice of their impropriety, does not preclude a discharge for willful misconduct."[16] The Court notes that a "single unambiguous warning" is not necessarily required in every case: "[t]he inquiry into whether a warning is sufficient to put the employee on notice is 'very fact specific.'"[17]

According to the record, Ms. Harris was terminated for a Category 4 offense under Bayhealth's disciplinary system, which includes conduct involving fraud and theft. According to the Corrective Action Policy, a Category 4 offense warrants immediate discharge. Ms. Harris was provided with the rules and policies regarding password protection and received training on these policies. Moreover, the record indicates that Ms. Harris met with Human Resources in 2016 regarding why she was receiving so many Driven points, and was "made aware at this time that it did appear that she was gaming the system." The Court notes that Ms. Harris did not need to receive previous warnings or notice prior to her termination for a Category 4 offense; however, it is apparent that Ms. Harris knew or should have known that her conduct was in violation of the employer's interest.

---

[16] *Coleman v. Department of Labor*, 288 A.2d 285, 288 (Del. Super. 1972) (citation omitted) (emphasis in original).
[17] *Murphy & Landon, P.A. v. Pernic*, 121 A.3d 1215, 1224 (Del. 2015).

Additionally, the Court finds that the two-step analysis for "just cause" has been met in this case and therefore that the UIAB's decision that Ms. Harris was discharged for "just cause" is supported by substantial evidence and is free from legal error. First, Bayhealth had a policy prohibiting the sharing and use of coworkers' passwords and logins. Second, Ms. Harris was aware of this policy, having acknowledged receipt of the Electronic Policy, and having received training on compliance in 2016, 2017, and 2018. Moreover, it is undisputed, pursuant to Bayhealth's Corrective Action Policy, that Ms. Harris could be terminated for conduct rising to the level of a Category 4 offense.

Ms. Harris argues that she was given permission to access her coworkers' accounts and that she did not steal any Driven points or defraud Bayhealth. The Court finds this argument unconvincing. While the record does indicate that Ms. Harris was granted permission by some of her coworkers to log in to their Driven accounts in order to send herself points, it also demonstrates that Bayhealth never granted Ms. Harris permission to do so, and that her coworkers were unaware that Ms. Harris was taking the amount of points that she was. For example, Bayhealth's investigation revealed that Ms. Harris had, indeed, received login information from at least one employee in order to award herself 1,000 points on a monthly basis; however, Ms. Harris was purportedly awarding herself 1,500 points on a monthly basis, and this amount increased to 6,500 points in February 2018.

It is clear from the record that Ms. Harris accessed other employees and coworkers' Driven accounts in violation of the Electronic Policy and without the consent of Bayhealth. Based on the evidence in the record, the UIAB found that sufficient evidence existed to establish that Ms. Harris had violated Bayhealth's Electronic Policy constituting willful misconduct, and that this offense fell under the purview of a Category 4 offense mandating immediate termination.

## IV. Conclusion

As mentioned above, this Court's review is confined to the facts contained in the record. The Court does not weigh the evidence or make its own factual findings. Rather, it merely determines if the evidence is legally adequate to support the agency's factual findings. Upon a review of the record, the Court finds that there was substantial evidence to support the UIAB's determination that Ms. Harris was terminated for "just cause." Ms. Harris has failed to carry her burden of showing why the UIAB's decision should be reversed.

**WHEREFORE,** the decision of the Unemployment Insurance Appeal Board is **AFFIRMED.**

**IT IS SO ORDERED.**

/s/ Noel Eason Primos
Judge

NEP/dsc
*Via File & ServeXpress & U.S. Mail*
oc:    Prothonotary
cc:    Verrona A. Harris
       Stacey A. Scrivani, Esquire
       Daniel C. Mulveny, Esquire