# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| SHANEIA HARRIS, | ) | |
| | ) | |
| Claimant-Appellant, | ) | |
| | ) | |
| v. | ) | C.A. No. N19A-11-005 VLM |
| | ) | |
| DELAWARE DEPARTMENT OF | ) | |
| LABOR and | ) | |
| THE UNEMPLOYMENT | ) | |
| INSURANCE APPEAL BOARD | ) | |
| | ) | |
| Employer-Appellees. | ) | |

## <u>ORDER</u>

Date Submitted: September 3, 2020
Date Decided: November 30, 2020

*Upon Consideration of Appellant's Appeal of the Decision of the Unemployment Insurance Appeal Board*, **AFFIRMED**.

John D. Stant II, Esquire, Legal Services Corporation of Delaware, Inc., Wilmington, DE. *Attorney for Appellant*.

Stacey X. Stewart, Esquire, Department of Justice, Wilmington, DE. *Attorney for the Delaware Department of Labor*.

Monica L. Townsend, Esquire, Department of Justice, Wilmington, DE. *Attorney for Appellee Unemployment Insurance Appeal Board*.

**MEDINILLA, J.**

1

# I.   INTRODUCTION

Appellant, Shaneia Harris ("Harris") appeals a decision of the Unemployment Insurance Appeal Board ("Board") that found that the Delaware Department of Labor ("Employer") discharged her for just cause, thereby disqualifying her from receiving unemployment insurance benefits pursuant to 19 *Del. C.* § 3314(2).  Upon consideration of the arguments, submissions of the parties, and the record in this case, the Court hereby finds as follows:

1.      Harris worked as part-time (casual employment) security guard for approximately six months from October 2018 to April 2019.[1]  In the early months of her employment, Harris's supervisor appeared relatively flexible and allowed Harris to take days off as needed.[2]  It is undisputed that attendance and tardiness issues started in December and lasted through the remainder of her time with Employer.[3]

2.      On March 22, 2019, she was verbally warned that her attendance would have to improve.[4]  On March 25, 2019, Harris's supervisor sent an email confirming that her attendance needed to improve,[5] stating, "further [attendance issues] will be

---

[1] *See* Opening Brief, D.I. 9, at 1 [hereinafter Opening Br.].
[2] *See* Opening Br. at 1; R. at 23.
[3] From December 27 through April 22, 2019, Employer recorded fifteen instances of lateness or absenteeism.  R. at 55.
[4] *See* Opening Br. at 2; R. at 26.
[5] R. at 51.

considered insubordination and dealt with accordingly."[6]  Thereafter, Employer documented seven additional attendance issues and terminated her employment on April 24, 2019.[7]

3.    Harris filed a claim for unemployment benefits with the Division of Unemployment Insurance.[8]  On May 21, 2019, a Claims Deputy found that Employer discharged Harris for just cause disqualifying her from unemployment benefits pursuant to 19 *Del. C.* § 3314(2).[9]  Harris timely appealed to an Appeals Referee.[10]  On June 18, 2019, following a hearing, the Appeals Referee affirmed the Claims Deputy's decision that Employer met its burden of proof that Harris's termination was for just cause.  Harris timely appealed the decision to the Unemployment Insurance Appeal Board (Board.)[11]

4.    On October 23, 2019, the Board heard Harris's appeal.[12]  Harris argued the Appeals Referee's decision was legally incorrect because she never received an unequivocal warning.[13]  The Board disagreed.  On October 28, 2019, the Board upheld the Appeals Referee's decision finding that the email Harris received from

---

[6] *Id.*
[7] *See* Opening Br. at 4; R. at 51.
[8] *See* Opening Br. at 2.
[9] *See id.*; R. at 1-2.
[10] *See* Opening Br. at 2;  R. at 7.
[11] *See* Opening Br. at 2; R. at 54-55.
[12] *See* Opening Br. at 4.
[13] *Id.*; R. at 64.

her supervisor was a "clear warning" of the disciplinary consequences that occurred.[14]

5. On November 6, 2019, Harris appealed the Board's decision. On December 30, 2019, Harris, through counsel, filed her opening brief. On March 10, 2020, Employer filed its Response. The same day, the Board filed a letter stating it took no position. Due to the global pandemic, review of this matter was temporarily stayed.[15] On July 21, 2020, Harris filed her Reply brief and this Court was assigned the matter on September 3, 2020. The matter is now ripe for review.

## II. STANDARD OF REVIEW

6. On an appeal from the Board, this "[C]ourt must determine whether the findings and conclusions of the Board are free from legal error" and whether they are "supported by substantial evidence in the record."[16] Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[17] The Court does not "weigh the evidence or make determinations

---

[14] R. at 75.

[15] The United States of America and the State of Delaware declared states of emergency due to COVID-19 that resulted in court closures to address public safety concerns. Per Administrative Directives of the Supreme Court of the State of Delaware, "[u]nder the authority of 10 *Del. C.* § 2004, the judicial emergency for all State courts and their facilities in Delaware [was] extended for another 30 days effective November 5, 2020 . . . ." Administrative Order No. 12 Extension of Judicial Emergency (Del. Nov. 3, 2020).

[16] *Wilson v. Unemployment Ins. Appeal Bd.*, 2011 WL 3243366, at *2 (Del. Super. July 7, 2011) (citing *Unemployment Ins. Appeal Bd. v. Martin*, 431 A.2d 1265, 1266 (Del. 1981); *Pochvatilla v. United States Postal Serv.*, 1997 WL 524062, at *2 (Del. Super. June 9, 1997); 19 *Del. C.* § 3323(a)).

[17] *Byrd v. Westaff USA, Inc.*, 2011 WL 3275156, at *1 (Del. Super. July 29, 2011) (quoting *Oceanport Industries, Inc. v. Wilm. Stevedores, Inc.*, 636 A.2d 892, 899 (Del. 1994)).

4

based on credibility or facts."[18]  Absent an abuse of discretion by the Board, this Court will uphold the Board's determination.[19]

### III.  DISCUSSION

7.      Pursuant to 19 *Del. C.* § 3314(2), an individual is disqualified from receiving unemployment benefits when terminated for "just cause."[20]  Under Delaware law, just cause is a "willful or wanton act in violation of either the employee's interests, or the employee's duties, or of the employee's expected standard of conduct."[21]  An isolated absence will likely not suffice.[22]  When an employee is aware of a company policy and/or received adequate warning, "the court has held repeated absenteeism to be a 'willful and wanton' violation of the 'employer's interests' and the 'employee's duty.'"[23]

8.      Here, the Board considered whether Harris knew that her absences were in violation of Employer's policy.  The Employer presented evidence that various verbal discussions took place between Harris and her supervisor related to her

---

[18] *Id.* (citing *Johnson v. Chrysler Corp.*, 203 A.2d 64, 66 (Del. 1965)).

[19] *See Funk v. Unemployment Ins. Appeal Bd.*, 591 A.2d 222, 225 (Del. 1991).

[20] 19 *Del. C.* § 3314(2) provides that an individual shall be disqualified from benefits, "[f]or the week in which the individual was discharged from the individual's work for just cause in connection with the individual's work and for each week thereafter until the individual has been employed in each of 4 subsequent weeks (whether or not consecutive) and has earned wages in other employment equal to not less than 4 times the weekly benefit amount."

[21] *Keim v. Greenhurst Farms*, 2001 WL 1490060, at *2 (Del. Super. Nov. 19, 2001) (citing *Abex Corp. v. Todd*, 235 A.2d 271, 272 (Del. Super. 1967)).

[22] *See Martin v. Delaware Supermarkets, Inc.*, 2012 WL 2700460, at *4 (Del. Super. July 5, 2012) (citing *Weaver v. Emp't Sec. Comm'n,* 274 A.2d 446, 447 (Del. Super. 1971); *Boughton v. Division of Unemployment Ins. of Dept. of Labor,* 300 A.2d 25, 27 (Del. Super. 1972)).

[23] *Martin*, 2012 WL 2700460, at *4 (quoting *Kiem*, 2001 WL 1490060, at *2).

tardiness and absences. Harris claims the Employer was tolerant of the conduct and focuses primarily on the language of the sole written email that served to memorialize the then most recent communication between her and her supervisor to suggest that the Board erred in finding that the warning was unambiguous. This Court disagrees.

9. The Court considers and rejects Harris's argument that because her supervisor may have previously tolerated her absences, her Employer failed to provide an unambiguous warning that termination would result for continued absences. A warning, written or otherwise, is only required when there has been prior acquiescence by the employer.[24] As noted, that was not the case here. While the supervisor may have been tolerant at first, Harris's conduct did not improve despite attempts to speak to her about it. By March 2019, the record is clear that Harris received warning – first verbal, then in written form via email – that her absences and tardiness continued to be problematic.[25]

10. Equally unavailing is Harris's argument that the written warning was ambiguous because it did not explicitly state that her absences would result in termination. Delaware law does not require a warning inform the employee of

---

[24] *Ortiz v. Unemployment Ins. Appeals Bd.*, 317 A.2d 100, 101 (Del. 1974) (fairness required a waring where employer condoned absenteeism for months but warning not always required); *see also Smoot v. Comcast Cablevision*, 2004 WL 2914287, at *4 (Del. Super. Dec. 16, 2004) ("As long as the company policy is clearly communicated to the employee, the employer has given adequate notice to justify termination of employment after a single violation of that policy.").
[25] *See* R. at 26, 51.

termination.[26] Instead, the warning must put employee on sufficient notice that her behavior was in violation of Employer's Policy.[27] That was done. In addition to speaking directly with her on March 22, her supervisor memorialized the discussion via email reminding her that absences were against the employer's policy, stating that "*further acts of absenteeism* would be considered insubordination and dealt with accordingly."[28] She was also directed to contact her supervisor if she was going to be late or not show up.[29] In the last instance, she did neither.[30] Even if Employer had tolerated Harris's behavior at first (after perhaps the first seven instances of lateness or tardiness,) the Court finds that Employer did not continue to do so, providing an unambiguous warning in March 2019.

11. After both verbal and written warning, Harris then engaged in several "further incidents" of unchanged conduct before Employer took the forewarned disciplinary action of termination. As such, the Board had before it substantial evidence to support its ruling that the continued conduct was "willful or wanton,"

---

[26] Delaware law does not require warnings to state the consequences of given acts to any particular level of specificity. *Coleman v. Dept. of Labor*, 288 A.2d 285, 288 (Del. 1972) ("[The] absence of advanced warning concerning the consequences of given acts, as opposed to notice of their impropriety, does not preclude a discharge for willful misconduct."); *see also Powell v. Northeast Treatment Centers, Inc.*, 2003 WL 23274835, at *5 (Del. Super. Dec. 17, 2003) ("This warning need not expressly state the ultimate consequences, but must give notice of the impropriety of the acts."); *Breese v. Unemployment Ins. Appeals Bd.*, 1993 WL 258853, at *3 (Del. Super. June 24, 1993) (inferring that written warning of consequences is not required).

[27] *See Bear-Glasgow Dental v. Edwards*, 2007 WL 1651988, at *3 (Del. Super. May 29, 2007).

[28] R. at 51 (emphasis added).

[29] *Id.* at 28-29.

[30] *Id.* at 29-30.

and her inability to show up for work on time or at all (albeit perhaps for good reasons) was nevertheless "in violation of either the employer's interests, or the employee's duties, or of the employee's expected standard of conduct."[31]

12.  The record supports a finding that Employer met its burden that Harris was terminated for just cause and not eligible for unemployment benefits.  There is no error of law. For the foregoing reasons, the Board's decision is **AFFIRMED.**

**IT IS SO ORDERED.**

/s/ Vivian L. Medinilla
Vivian L. Medinilla
Judge

oc:  Prothonotary

---

[31] *Kiem*, 2001 WL 1490060, at *2 (citing *Abex Corp. v. Todd*, 235 A.2d 271,272 (Del. Super. 1997)).